No. 15-3123

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

---

GREGORY C. KAPORDELIS,

Petitioner-Appellant,

U.S.C.A. 7th Circuit
RECEIVED

OCT 30 2015  EF

GINO J. AGNELLO
CLERK

v.

JEFFREY S. WALTON,
(Warden)

Respondent-Appellee.

---

On Appeal from the United States District Court
for the Southern District of Illinois
Case No. 14-cv-1005
The Honorable David R. Herndon, District Judge

---

MEMORANDUM IN SUPPORT OF APPEAL AND SHORT APPENDIX FOR
PETITIONER-APPELLANT GREGORY C. KAPORDELIS

---

October 29, 2015

Gregory C. Kapordelis, Pro Se
Fed. I.D. #63122-053
Marion U.S. Penitentiary
P.O. Box 1000
Marion, Illinois 62959

## INTRODUCTION

In its October 2, 2015, order, the Court instructed Petitioner-Appellant Kapordelis "to file a memorandum explaining why the Court should not summarily affirm the district court's judgment," where the district court summarily dismissed his petition for a 28 U.S.C. § 2241 review pursuant to the savings clause, 28 U.S.C. § 2255(e).

Neither the Federal Rules of Appellate Procedure nor the Local Rules of the Seventh Circuit identifies what such a memorandum should include or the parameters for it (e.g., page limits, number of copies to be filed, etc.). Black's Law Dictionary (Seventh Edition) defines memorandum as "a party's written statement of its legal arguments presented to the court, usually in the form of a brief."

When Petitioner sought direction from Clerk #5 (Pro Se Office), with regard to the rationale for suspending a plenary review through typical briefing, and inquired as to what problems needed to be addressed in the memorandum, he was told that (1) there appears to be a procedural violation of Rule 22.2, which requires permission from the Seventh Circuit before filing a second or successive petition for collateral review, and (2) it is necessary to argue all bases for relief on appeal, rather than just the jurisdictional issue. On this basis, Petitioner submits a detailed Jurisdictional Statement (to include arguments which explain why a plenary review by a merits panel is warranted) and the various sections which would have been presented in an Appellant Brief, had it been requested. If there are any shortcomings with respect to form or style, Petitioner respectfully requests the Court's leave, as he had no guideline to follow when generating this memorandum.

As explained in the pages which follow, there is no jurisdictional defect to a plenary review, and an assessment on the merits is proper.

TABLE OF CONTENTS

INTRODUCTION............................................................i

TABLE OF CONTENTS AND AUTHORITIES...............................ii

OVERVIEW: WHAT THIS CASE IS AND IS NOT ABOUT....................1

JURISDICTIONAL STATEMENT AND ARGUMENTS..........................3

STATEMENT OF THE ISSUES........................................8

STATEMENT OF THE FACTS........................................10

    A. Arrest, Conviction, Sentence, and Direct Appeal..........10

    B. The § 2255 Proceedings (N.D. Ga)........................11

    C. This Action (S.D. Ill.)..................................15

    D. The Seven Claims of Constitutional Error.................18

    E. The § 2241 Disposition and Rule 59(e) Proceedings........19

SUMMARY OF THE ARGUMENT.......................................23

ARGUMENT......................................................26

    I.   Standard of Review ..................................26

    II-A. The § 2241 Court's Legal Errors....................27

        1. It is Error to Conclude that § 144 Recusal
           Safeguards Do Not Apply in Collateral Cases......27

        2. It is Error to Refuse a Savings Clause Analysis
           Based on Kapordelis's Facts, and Instead Hold
           that Relief Can Only Be Granted if the Davenport
           Standard is Met, and Then Only in Cases of Actual
           Innocence........................................32

        3. The § 2241 Court Errs by Dismissing the Petition
           With Prejudice...................................38

        4. The § 2241 Court Errs by Summarily Dismissing
           the Petition Under Rule 4 of § 2254..............39

    II-B. The § 2241 Court's Factual Errors...................40

        1. Kapordelis Did Support His Webster Arguments ......40

        2. The Dispositive Issues Have Never Been Litigated..41

        3. Judge Pannell Expressly Refused to Litigate
           the Recusal Matter...............................42

        4. This Petition Does Not Seek to Remedy a "Bad
           Outcome." It Seeks to Remedy a Structural Defect..43

III.  Five Crucial Predicates to the Legal Arguments...........44

    A.  The Recusal Motion and Affidavit Were Timely Filed,
       Conformed With § 144 of Title 28, and Sufficiently
       Alleged Personal Bias...................................44

    B.  Judge Pannell Refused to Litigate the Recusal
       Safeguards In His Court..............................48

    C.  The Eleventh Circuit Conducted No Review of
       The Recusal Matter..................................48

    D.  The Berger/Womack Claim Was Timely Filed But
       Never Litigated.....................................49

    E.  No Article III Judge Has Ever Assessed the
       Affidavit of Bias...................................50

    F.  Summary of Section III...............................50

IV.   Judge Pannell's Obstruction of the Recusal Safeguards
    Resulted in Violations of 28 U.S.C. §§ 144, 636(b),
    Fed.R.Civ.P. 72, Rule 4 of § 2255, and Article III........50

    A.  Judge Pannell's Obstruction violated § 144.............51

    B.  Judge Pannell's Refusal Violated Rule 4 of § 2255......54

    C.  Judge Pannell's Refusal Violated § 636(b) and Rule 72..54

    D.  Judge Pannell's Refusal Violated Article III...........56

    E.  Summary of Section IV................................61

V.    Where Kapordelis's Initial § 2255 Claims Were Never
    Litigated in a Court of Competent Jurisdiction,
    Savings Clause Relief is Warranted.......................61

    A.  What a Legitimate Savings Clause Analysis Looks
       Like Under Kapordelis's Unique Circumstances..........63

    B.  Relief is Justified Based on Rationales Used By
       Various Courts to Deny Savings Clause Relief When
       Bias Alone Was Alleged...............................67

    C.  The Savings Clause Rationales Used By Three Other
       Circuit Courts of Appeal Justify Relief in this Case...67

    D.  Additional Support for Relief Based on Seventh
       Circuit Reasoning in Other Cases.....................68

    E.  Summary of Section V.................................69

VI.   Summary Affirmance Is Not Proper In This Case ............70

CONCLUSION.....................................................72

## INDEX TO APPENDICES

NOTE: References to App. A through App. O concern documents filed at the § 2241 Court in Doc. #1, Petitioner's Initial Petition for § 2241 Relief.  References to App. P through App. U concern the documents filed in the instant Appendix at the Seventh Circuit (bound separately).

App. P: Eleventh Circuit Decision on Direct Appeal...............1

App. Q: Doc. 557 (Crim. Case), Magistrate Brill's Order Denying the Motion to Recuse..........................18

App. R: Doc. 560 (Crim. Case), Kapordelis's Objections to Magistrate Brill's Recusal Order.....................25

App. S: Doc. 567 (Crim. Case), Magistrate Brill's R & R Denying § 2255 Relief...................................59

App. T: Doc. 574 (Crim. Case), Judge Pannell's Adoption of Magistrate Brill's R & R Denying § 2255 Relief.........72

App. U: Doc. 591 (Crim. Case), Judge Pannell's Order Refusing to Adjudicate the Recusal Matter in his Court..........74

## TABLE OF AUTHORITIES

**Supreme Court**                                                **Pages**

Ankenbrandt v. Richards, 504 U.S. 689 (1992)................51, 52

Arizona v. Fulminante, 499 U.S. 279 (1991).......................64

Berger v. United States, 255 U.S. 22 (1921).................passim

Boumediene v. Bush, 553 U.S. 723 (2008)..........................70

Bordenkircher v. Hayes, 434 U.S. 357 (1977)......................46

Bracy v. Gramley, 520 U.S. 899 (1997)............................60

Cary v. Curtis, 44 U.S. 236 (1845)...............................51

Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986)....................................59-61

Gall v. United States, 169 L.Ed.2d 445 (2007)...................44

In re Murchison, 349 U.S. 133 (1955).............................60

Kontrick v. Ryan, 540 U.S. 443 (2004)............................51

Lawrence v. Texas, 156 L.Ed.2d 508 (2003).......................46

Liteky v. United States, 510 U.S. 540 (1994)..................45-47

New Orleans Pub. Serv., Inc. v. Council of City
     of New Orleans, 491 U.S. 350 (1989)....................51, 52

Persaud v. United States, 134 S. Ct. 1023 (2014)(mem.)..........37

Sanders v. United States, 373 U.S. 1 (1963)......................5

Stern v. Marshall, 131 S. Ct. 2594 (2011)...................56, 59

United States v. Nixon, 418 U.S. 683 (1974)....................56

United States v. Raddatz, 447 U.S. 667 (1981)..................58


**Circuit Courts of Appeal**

Ackerman v. Novak, 283 F.3d 647 (10th Cir. 2007)...........36, 68

Bradshaw v. Story, 86 F.3d 164 (10th Cir. 1996)..................31

Brocksmith v. United States, 1997 U.S. App. LEXIS 1841
     (7th Cir. 1996)...........................................29

Brown v. Caraway, 719 F.3d 583 (7th Cir. 2013)(Overruled). 6, 35, 63

Brown v. United States, 748 F.3d 1045 (11th Cir. 2014)....29, 56-58

Cephas v. Nash, 328 F.3d 98 (2d Cir. 2003).......................39

Charles v. Chandler, 180 F.3d 753 (6th Cir. 1999)...............31

Christo v. Padgett, 223 F.3d 1324 (11th Cir. 2000)...........45, 48

Cintron v. United States, 401 Fed. Appx. 485 (11th Cir. 2010)....29

Cradle v. Miner, 290 F.3d 536 (3rd Cir 2002).................18, 67

Franklin v. McCaughtry, 398 F.3d 955 (7th Cir. 2005)............64

Garza v. Lappin, 253 F.3d 918 (7th Cir. 2001)..........6, 35-38, 63

Harrison v. McBride, 428 F.3d 652 (7th Cir. 2005)...............60

Harrison v. Ollison, 519 F.3d 952 (9th Cir. 2008)...............39

Hill v. Morrison, 349 F.3d 1089 (8th Cir. 2003).................39

Hill v. Werlinger, 695 F.3d 644 (7th Cir. 2012)...........26, 61-62

Iacullo v. United States, 463 Fed. Appx. 896 (11th Cir. 2012).49,55

In re Davenport, 147 F.3d 605 (7th Cir. 1998)...............passim

## Circuit Courts of Appeal (cont'd)

Morrison v. United States, 432 F.2d 1227 (5th Cir. 1970).........29

Nelson v. United States, 297 Fed. Appx. 563 (8th Cir. 2008)......49

O'Connor v. United States, 133 F.3d 548 (7th Cir. 1998)..........68

Potts v. United States, 210 F.3d 770 (7th Cir. 2000)..7, 27, 35, 68

Prost v. Anderson, 636 F.3d 578 (10th Cir. 2011).........18, 36, 68

Spaulding v. Taylor, 336 F.2d 192 (10th Cir. 1964)...........36, 68

Stirone v. Markley, 345 F.2d 473 (7th Cir. 1965)................36

Taylor v. Gilkey, 314 F.3d 832 (7th Cir. 2002)..5, 7, 43, 63, 66-67

Tezak v. United States, 256 F.3d 702 (7th Cir. 2001).............29

Travino v. Johnson, 168 F.3d 173 (5th Cir. 1999)................49

Triestman v. United States, 124 F.3d 361 (2d Cir. 1997)..........68

Tripati v. Henman, 843 F.2d 1160 (9th Cir. 1987)................31

United States v. Carrol, 380 Fed. Appx. 456 (5th Cir. 2010)......49

United States v. Johnson, 258 F.3d 361 (5th Cir. 2001).......57, 59

United States v. Kapordelis, 561 F.3d 1291 (11th Cir. 2009)......11

United States v. Roy, 761 F.3d 1285 (11th Cir. 2014).............64

United States v. Scott, 426 F.3d 1324 (11th Cir. 2005)...........44

United States v. Womack, 454 F.2d 1337 (5th Cir. 1972).......passim

Webster v. Daniels, 784 F.3d 1123 (7th Cir. 2015)...........passim

Rice v. Rivera, 617 F.3d 802 (4th Cir. 2010)....................39

Wooten v. Cauley, 677 F.3d 303 (6th Cir. 2012)..................39

Williams v. Warden, 713 F.3d 1332 (11th Cir. 2013)..........39, 52

## District Courts

Brown v. United States, 2012 U.S. Dist. LEXIS 99645 (N.D. GA)....55

Jordan v. United States, 2008 U.S. Dist. LEXIS 29534 (C.D. IL)...31

Lavi v. United States, 80 F.Supp.2d 194 (S.D. NY, 2000)..........31

United States v. Brunsman, 2014 U.S. Dist. LEXIS 10259 (S.D. OH).55

## Other Authorities

Federal Practice and Procedure, 13 C. Wright, A. Miller,
    and E. Cooper...............................................53

## Federal Statutes

18 U.S.C. § 2423

18 U.S.C. § 3553(a)

28 U.S.C. § 2254

28 U.S.C. § 2241

28 U.S.C. § 2244

28 U.S.C. § 2255

28 U.S.C. § 2253

28 U.S.C. § 144

28 U.S.C. § 455

28 U.S.C. § 636(b)

## Federal Rules

Fed.R.Civ.P. 59(e)

Fed.R.Civ.P. 72

Fed.R.Crim.P. 52(b)

Fed.R.Crim.P. 404(b)

Rule 4 of § 2255

Rule 4 of § 2254

Fed.R.App.P. 27(c)

11th Cir. Rule 27-2

## Constitutional Provisions

Article III

Article I, § 9, cl. 2

Fourth, Fifth and Sixth Amendments

OVERVIEW: WHAT THIS CASE IS AND IS NOT ABOUT

   This appeal is not about savings clause access to a 28 U.S.C.
§ 2241 review because of a "bad" or erroneous outcome in an intitial
§ 2255 proceeding.  The Seventh Circuit was clear in Davenport and
Taylor that claims of ordinary error cannot be litigated once an initial
collateral review has been lawfully concluded.

   Instead, this appeal addresses § 2255(e) access to a § 2241 review
of ordinary claims of constitutional error where the initial § 2255
proceedings were procedurally and structurally defective.  The procedural
defect resulted from a personally biased judge's refusal to litigate
the question of his own disqualification, as required under 28 U.S.C.
§ 144 and Rule 4 of § 2255.  The structural defect emerged therefrom,
because it left the § 2255 court without adjudicatory capacity to either
assess the grounds of error in the petition or issue a lawful, final
judgment to dispose of them.  The dispositive issue is whether § 2255(e)
—a statute which permits a prisoner to resort to § 2241 only if the
remedy by [§ 2255] motion is "inadequate or ineffective to test the
legality of [a prisoner's] detention"—should yield under the unique cir-
cumstances in this case.  Petitioner Kapordelis argues that it should.

   Although Davenport and its progeny only confronted second or succes-
sive collateral petitions which would be barred by the AEDPA's constraints
under § 2255(h), the Seventh Circuit has never hinted, suggested, or im-
plied that the savings clause would not provide a remedy in cases where
the initial proceedings were structurally defective in terms of process.
After all, the savings clause was enacted long before the AEDPA emerged
on the scene of habeas corpus litigation, and it always has been relevant
in cases where a perverse reading of § 2255 would undermine a prisoner's
constitutional right to access at least one round of effective and ade-
quate collateral review.  Although rare, these events remain justiciable.

1

Unlike most cases where a prisoner seeks a trial judge's recusal in § 2255 proceedings due to bias, Petitioner Kapordelis's claims of personal bias are substantial and supported.  The § 2255 judge is accused of exposing a homophobic predisposition and bigoted agenda during the sentencing, because he found Petitioner's lawful, private, homosexual-sexual conduct in Prague, Czech Republic, more condemnable than the crime of heterosexual toddler rape, and because he substantially in-creased the prison term on the basis of this comparison.  Rather than assess the timely filed affidavit chronicling this bias, the judge ex-pressly refused to litigate the matter in his court (a requirement under § 144 and Rule 4 of § 2255). This refusal also obstructed the appeal: the Eleventh Circuit declined jurisdiction to review the magistrate court's order to deny recusal—an order that was in limbo due to unlitigated objections thereto.  In the end, the decision as to an Article III judge's disqualification was left in the hands of an Article I judge alone.

If the denial of an impartial tribunal—due to obstructed process— does not trigger the savings clause, nothing does.  This "safety hatch" was specifically designed to cure defective process long before it was called (post-AEDPA) to cure defects regarding the scope of a statute or new evidence.  If § 2255 can be read so as to render § 144 protections unavailable in specific cases (as the § 2255 judge advocates), or to render these protections inapplicable in all § 2255 proceedings (as the § 2241 judge advocates), then habeas corpus must provide a remedy.

Summary affirmance "is an exception to the normal consideration of a matter on appeal.  It should be employed only where the propriety of such action is clear...." This case warrants a plenary review after full briefing, where (1) no jurisdictional defect exists; (2) the § 2241 Court clearly erred, factually and legally; (3) the outcome would have been different but for the errors; and (4) the issues are very substantial.

STATEMENT AND ARGUMENT REGARDING JURISDICTION

## A. Jurisdiction is Sound

Petitioner-Appellant Gregory C. Kapordelis appeals from the final judgment entered by the U.S. District Court for the Southern District of Illinois (1) summarily dismissing his § 2241 petition with prejudice pursuant to Rule 4 of § 2254, and (2) denying his Rule 59(e) motion to vacate, amend, or modify the § 2241 order. Kapordelis is in federal custody at the Federal Correctional Institution, Marion, Illinois, following a criminal conviction in the U.S. District Court for the Northern District of Georgia. The district court (S.D. Ill.) had jurisdiction over Kapordelis's § 2241 petition pursuant to 28 U.S.C. §§ 1331, 2255(e), and 2241 (potentially). Section 2255(e) is, according to the recent decision in Webster v. Daniels, Case No. 14-1049 (en banc), a threshold matter that must be decided before a § 2241 review can take place. Judge Herndon (also referred to as the "§ 2241 Court") denied this threshold access and never ruled on the merits of the underlying claims of constitutional error pertaining to Kapordelis's conviction and sentence.

Kapordelis filed his § 2241 petition on September 14, 2014. (Doc. 1). The § 2241 Court denied this motion on October 14, 2014. (Doc. 5). Kapordelis filed his Motion to Vacate, Modify, or Amend Judgment, pursuant to Rule 59(e), Fed.R.Civ.P., on November 7, 2014. (Doc. 8). He supplemented this motion on January 27, 2015 (Doc. 13) and, again, on May 12, 2015 (Doc. 14). The § 2241 Court denied Rule 59(e) relief on September 16, 2015. (Doc. 16).

Kapordelis filed a Notice of Appeal, along with a docketing statement, on September 22, 2015. Payment for the appeal was received on September 29, 2015. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1291 and 2255(e), as well as § 2241 (potentially).

3

B. **There Is No Jurisdictional Defect Created By Kapordelis's Failure To File An Application Under 28 U.S.C. §§ 2244(b) or 2255(h).**

Petitioner Kapordelis files his § 2241 petition based on the savings clause exception, § 2255(e). This exception provides its own jurisdiction (subject-matter and appellate) and is neither subject to nor predicated upon the conditions enumerated in § 2244(b) or § 2255(h). Moreover, there is no bar to these proceedings under § 2244(b)(1).

First, § 2244(a) plainly sets forth authority for a second or successive petition for collateral review without any permission.

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, **except as provided in section 2255 [28 U.S.C. § 2255].**

28 U.S.C. § 2244(a)(emphasis added). Subsection (a) appears before subsection (b) and is not subjected to the conditions in (b). Where Kapordelis presents a case under the savings clause, which is part of § 2255, he need not apply for permission in advance of his petition.

Second, the preclusive effect of § 2244(b)(1), which bars "a claim in a second or successive habeas corpus application under section 2254 [28 U.S.C. § 2254] that was presented in a prior application...," does not control, where Kapordelis's savings clause claim alleges a structural defect in the initial § 2255 proceedings which renders the judgment in those proceedings void under the law. In short, if it is established through a merits review that the § 2255 proceedings were inadequate or ineffective due to the trial judge's refusal to litigate the question of his own personal bias under 28 U.S.C. § 144, then this not a second or successive collateral claim at all (even though, at first blush, it appears that way). It is, instead, the first collateral review in a court with competent jurisdiction.

In Taylor v. Gilkey, 314 F.2d 832 (7th Cir. 2002), the Seventh Circuit assessed a savings clause case where the prisoner presented a simple claim of error (ineffective assistance of counsel) that had been presented in a prior collateral proceeding. The Taylor Panel acknowledged that "Congress is entitled to——and through § 2255[h] did—— decide that two rounds of judicial review are sufficient in all but the extraordinary situation," and then barred the attempt at a second round of collateral review under § 2244(b)(1). Id., at 836. The panel then explained its reasoning:

> One goal of the [AEDPA], which added § 2244[b] and § 2255[h] to the Judicial Code, was to replace Sanders [v. United States, 373 U.S. 1 (1963),] with an approach under which only defined circumstances permit successive collateral attacks. The escape hatch in § 2255[e] must be applied in light of that history. **If error in the resolution of a collateral attack were enough to show that § 2255 is inadequate or ineffective, many of the amendments made in 1996 would be set to naught.** Yet a claim of error is all Taylor has.

Id. (emphasis added)(internal citation omitted). This rationale is instructive here, where Kapordelis should not be barred under § 2244 (b)(1) because he alleges far more than a mere error in the resolution of his initial collateral attack: he alleges a fatal, structural defect in the proceedings which renders them a nullity under the law. Where the Taylor panel concluded that "Once an initial collateral attack has reached its conclusion [], a claim of error in the decision cannot be entertained," Id., the instant panel should hold that Kapordelis's circumstances warrant a habeas review of his original claims of error. Indeed, there is no way to equate his original proceeding with the adequate or effective one that habeas corpus promises. After all, his judge was personally biased and interpreted § 2255 so as to foreclose the recusal safeguards set forth in § 144 and Rule 4 of § 2255. Likewise, it would be unconstitutional to conclude that Judge Herndon is correct when isolating collateral proceedings from recusal safeguards that bite.

C. The Savings Clause Is Not Limited To Second or Successive Petitions, Nor Is It Limited to Changes in the Law or New Evidence

It is clear that the Seventh Circuit has only granted savings clause relief (thus far) in cases where there has already been a lawfully concluded initial round of collateral review. Indeed, the fact that there was one completed round of collateral proceedings led the Court to permit successive claims barred by § 2255(h) and § 2244(b) only when there is extraordinary circumstances predicated on new law or new evidence. See, e.g., In re Davenport, 147 F.3d 605 (7th Cir. 1998)(alleging new law concerning statutory interpretation which was unavailable in the initial proceeding, made retroactive by the Supreme Court, and proved actual innocence); Garza v. Lappin, 253 F.3d 918 (7th Cir. 2001)(alleging an intervening decision of an international tribunal which questioned the propriety of a death sentence); Webster v. Daniels, 784 F.3d 1123 (7th Cir. 2015)(en banc)(alleging newly discovered evidence that would demonstrate categorical and constitutional ineligibility for the death penalty under a new Supreme Court decision); Brown v. Caraway, 719 F.3d 583 (7th Cir. 2013)(alleging new law concerning statutory interpretation as to sentence, which fit the conditions in Davenport apart from actual innocence). Because all these cases involved a second bite at the collateral review "apple," savings clause relief had a price: there had to be something more than an ordinary claim of error in the equation, and be based on new law or new evidence.

This does not mean, however, that savings clause relief can only emerge when a prisoner has already faced a lawful collateral proceeding and seeks a second round of review. Indeed, such a reading would do more than apply the "escape hatch" in light of AEDPA; it would allow AEDPA to swallow Congress's decision to apply § 2255(e) inside and outside the realm of § 2255(h). To be clear, if Congress intended to

prevent the savings clause from having an effect in cases where the initial § 2255 proceedings were structurally defective (and inadequate or ineffective on that basis), it would have subordinated the relief under § 2255(e) to the conditions in § 2255(h) which are limited to second or successive cases.  But, it did not do this.

Where the savings clause was enacted in 1948 (i.e., long before the AEDPA was enacted and constraints were placed on second or successive petitions), it must have had a purpose other than ensuring that the ban on successive petitions did not undermine a prisoner's right to habeas corpus relief.  Kapordelis argues that the savings clause, as initially conceived and preserved over time, was designed specifically to prevent the type of scenario he faces today: a trial judge who reads § 2255 in such a way that it "suspends the writ of habeas corpus" for all intents and purposes, by denying a litigant his right to an impartial tribunal.  To be sure, a personally biased habeas tribunal is of no use.

Section 2255(e) is not all that complicated.  It "poses the question whether the remedy [by § 2255 motion] is adequate 'to test the legality' of the detention. This implies a focus on procedures rather than out-comes." Taylor, 314 F.3d at 835.  Kapordelis is not complaining about the outcome of any decision reached by the § 2255 Court; he is complaining about a process which was corrupted and thus prevented any lawful decision from being reached.  Judge Pannell's reading of § 2255 so as to thwart his just disqualification under § 144 and Rule 4 of § 2255, denied Petitioner what he was entitled to: "one unencumbered opportunity to receive a decision on the merits." Potts v. United States, 210 F.3d 770 (7th Cir. 2000).  He should receive this opportunity in a § 2241 proceeding accessed by and through the savings clause.

This case should proceed to a merits review based on a full savings clause analysis after the parties have been allowed to brief the issues.

STATEMENT OF THE ISSUES

1. Whether the District Court erred, where (among other things) it
   held that:

   (a) the recusal safeguards set forth at 28 U.S.C. § 144, as
       interpreted in <u>Berger v. United States</u>, 255 U.S. 22 (1921),
       and <u>United States v. Womack</u>, 454 F.2d 1337 (5th Cir. 1972)
       (binding on the Eleventh Circuit), apply exclusively to
       criminal proceedings, despite the plain language of the
       statute to the contrary;

   (b) the savings clause, 28 U.S.C. § 2255(e), does not apply in
       cases where there is a structural defect in the initial
       § 2255 proceedings which strips the court of its subject-
       matter jurisdiction and prevents issuance of a lawful, valid
       final judgment disposing of the underlying claims of error;

   (c) the savings clause can only open the portal to a § 2241
       review in second or successive cases, and then only when
       (i) the <u>Davenport</u> conditions are met, and (ii) there is an
       allegation of actual innocence;

   (d) this case could be summarily dismissed with prejudice under
       Rule 4 of §2254 without a savings clause analysis based on
       the unique facts presented.

2. Whether the §2255 Court responsible for testing the legality of
   Kapordelis's conviction and sentence was stripped of its subject-
   matter jurisdiction (i.e., adjudicatory capacity), where:

   (a) the personally biased trial judge conducting the proceedings
       refused to litigate the sufficiency of a timely-filed affi-
       davit which alleged bias in conformance with § 144;

(b) this structural obstruction violates 28 U.S.C. §§ 144 and 636(b), Rule 4 of § 2255, Fed.R.Civ.P. 72, and Article III;

(c) binding case law interpreting process under § 144 holds that the filing of an affidavit of bias, conformably to § 144, "leaves the judge no duty other than to pass upon the legal sufficiency of the affidavit to show his objectionable inclination or disposition, and, if legally sufficient, compels his retirement from the case...." Womack, 454 F.3d at 1341 (adopting Berger).

3. Whether a § 2255 Court stripped of its subject-matter jurisdiction, due to a biased trial judge's refusal to litigate the question of his recusal under § 144, is "inadequate or ineffective to test the legality of [Kapordelis's] detention," 28 U.S.C. § 2255(e), and thus justifies savings clause access to a § 2241 review to secure a "first bite" at the collateral review apple with respect to his original claims of constitutional error.

STATEMENT OF THE FACTS

A. Arrest, Conviction, Sentence, and Direct Appeal

On April 12, 2004, Kapordelis was arrested based on allegations of molestation attributed to three juveniles in St. Petersburg, Russia. He was susequently indicted on May 4, 2004, based on these accusations. See United States v. Kapordelis, No. 04-cr-249-CAP (N.D. Ga, 2004). All Russian-related counts were dropped after it was established that the government's confidential informant—not Kapordelis—was the person who molested the children in Russia. (Docs. 205, 216, 267, 297, 313, 318).[1]

At the time of Kapordelis's arrest, however, officials searched his home in Gainesville, Georgia, seized computers, and had them forensically examined.  Probable cause to obtain the search warrant was based on the bogus Russian allegations, not domestic conduct.  Then, eight months after the arrest, Kapordelis was indicted on child pornography counts based on evidence (unrelated to Russia) found on his computers. (Doc. 78).

Ultimately, Kapordelis faced trial under a Fourth Superceding Indictment. (Doc. 318).  The indictment alleged seven counts related to the illicit pornography, and, on May 24, 2007, a jury returned a verdict of guilty on six of these counts. (Doc. 457).

On September 19, 2007, Kapordelis was sentenced by Judge Pannell to thirty-five years of imprisonment, six years of supervised release, and a fine of $20,000.00. (Doc. 499, 4-5).  Kapordelis has been incarcerated at the Federal Correctional Institution in Marion, Illinois, since sentencing.  Marion is located in the Southern District of Illinois.

---

1. Documents numbered 1-15 refer to those in the § 2241 Court, Case No. 14-cv-1005-DRH (S.D. Ill.).  Documents numbered 100 or higher refer to those in the criminal and § 2255 Court, Case No. 04-cr-249-CAP (N.D. Ga.).  References to "S.A." refer to the Short Appendix, bound hereto.  "App." refers to the Appendix submitted to the § 2241 Court, Doc. 1, if labeled App. A through App. O, otherwise to this Appendix.

Kapordelis appealed his conviction and sentence in the U.S. Court of Appeals for the Eleventh Circuit. United States v. Kapordelis, No. 07-14499 (11th Cir. 2007). He argued seven claims of error, two of which were rejected by the panel outright due to the appellate attorney's failure to sufficiently argue the issues, or improper reliance on records in the district court. A third claim was fatally prejudiced by this attorney's failure to identify relevant exhibits, an oversight that provoked the panel to waive the exhibits altogether. The Eleventh Circuit rejected the remaining claims on the merits, and the conviction and sentence were affirmed. United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009), cert. denied, January 23, 2010. (App. P).

## C. The § 2255 Proceedings

Kapordelis filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255 on January 26, 2011. (Doc. 536). On the same date, he filed a motion to recuse District Judge Charles Pannell (the trial and sentencing judge) from the proceedings, pursuant to 28 U.S.C. § 144 and § 455. (Doc. 538). When the case was assigned to Magistrate Judge Gerrilyn G. Brill (she handled pretrial matters during the criminal case), Kapordelis filed a replacement recusal motion. This motion included an affidavit alleging personal and pervasive bias against Judge Pannell, and pervasive bias against Magistrate Brill. (Doc. 546; too long to append to this brief). By order, the court accepted Kapordelis's pro se certificate of good faith (a requirement). Note: all facts related to the recusal motion and affidavit are presented in the argument section of this brief for better assimilation. (See Section III(A), infra).

Before the § 2255 motion was decided, Magistrate Brill denied the motion to recuse in a written order, as opposed to a report and recommendation ("R & R") pursuant to 28 U.S.C. §§ 636(b)(1)(B, C). (Doc. 557,

11

entered on September 20, 2011; App. Q).

Kapordelis filed timely objections to Magistrate Brill's recusal order, in the form of an appeal to District Judge Pannell pursuant to Fed.R.Civ.P. 72. (Doc. 560; App. R). These objections were submitted to Judge Pannell, by his clerk, on October 6, 2011. However, Judge Pannell never ruled on the objections and never assessed the sufficiency of the affidavit (even though Kapordelis requested a plenary review). (Id., 25).

On December 12, 2011, Magistrate Brill issued an R & R to deny the § 2255 motion. (Doc. 567; App. S). **The R & R did not refer to the recusal decision or the affidavit alleging bias.** Judge Pannell adopted (wholesale) the magistrate's R & R on March 6, 2012. (Doc. 567; App. T). His order did not refer to the recusal decision, the objections to that decision, or the affidavit alleging bias. The district court declined to issue a certificate of appealability ("COA"). (Doc. 577; issued on April 23, 2012, in response to a Rule 59(e) motion).

Kapordelis filed a notice of appeal on June 25, 2012, to challenge both the district court's decision "to deny relief pursuant to § 2255," and the decision to "deny relief pursuant to 28 U.S.C. §§ 144 and 455." (Doc. 579; App. B). The Eleventh Circuit assigned only one appeal number: Kapordelis v. United States, No. 12-13456. In response, Kapordelis filed on August 2, 2012, a Motion to Bifurcate the Appeal in order to obtain a review of the recusal decision without regard to any decision concerning issuance of a COA on the § 2255 claims of error. (App. C). In the motion, he argued that Rule 4 of § 2255 appears to provide jurisdiction to review the magistrate's recusal order despite the pendency of the objections thereto. He also identified multiple authorities holding that a COA is not required to appeal from a properly litigated recusal decision. (Id., 3-5).

On September 26, 2012, Judge Pannell denied a subsequent Rule 59(e)
motion to amend (Doc. 587), and the formal application for a COA (Doc.
588). In his order (Doc. 591; App. U), Judge Pannell expressly refused
to litigate the recusal decision in his court, and instead transferred
his supervisory duties over the magistrate court, to the appellate
court, with respect to this issue:

> The Movant's Motion to Amend or Alter Judgment (Doc. 587) is
> denied. Any uncertainty about the viability of the movant's
> objections to the failure of the judges of this court to
> recuse themselves...can be resolved by the Court of Appeals.

(App. U, 1)(emphasis added). This is a critical point.

On January 23, 2013, the Eleventh Circuit declined to issue a
COA with respect to the § 2255 grounds of error presented in Kapordelis's
application for COA. Importantly, the COA application did not discuss
the magistrate's recusal order because the Motion to Bifurcate was still
pending at the time. (App. D). A Motion to Reconsider was also denied.
(App. E).

After an 18-month delay, the Eleventh Circuit finally adjudicated
the August 2, **2012**, Motion to Bifurcate, on April 8, **2014**. (App. F, 2).
In its order, the panel does not indicate whether it is declining the
review of the magistrate's order based on Judge Pannell's violation
of § 144, his violation of Rule 4 of § 2255, his violation of § 636(b),
his violation of Fed.R.Civ.P. 72, or his violation of Article III.
Importantly, it also does not criticize or challenge the authorities
which hold that a COA is NOT required to appeal recusal orders.

Still on appeal in the Eleventh Circuit, Kapordelis filed a Motion
to Clarify the April 8, 2014, order, pursuant to Fed.R.App.P. 27(c)
(docketed as a Motion to Reconsider). He argued that fatal jurisdic-
tional consequences emerge under § 144, as interpreted in Berger v.
United States, 255 U.S. 22 (1921), and United States v. Womack, 454

13

F.2d 1337 (5th Cir. 1972)(binding on Eleventh Circuit), if Judge Pannell's refusal to litigate the recusal decision, in his court, also thwarts appellate review of the magistrate court's order. (App. G).

A week later, Kapordelis filed a supplemental motion to Void All Judgments in Appeal No. 12-13456 Due to Lack of Subject-Matter Jurisdiction, again arguing Berger and Womack for support. (App. H). Specifically, he argued that Judge Pannell's refusal to litigate the recusal matter left his court without adjudicatory capacity to proceed further in the case, thus depriving him of authority to assess the grounds of error or to issue a final order disposing of the § 2255 claims. Without a lawful, final judgment under § 2255, the appellate court was without jurisdiction under 28 U.S.C. § 2253(a), which requires a valid, final order prior to consideration of any application for COA under § 2253(c).

Although the two motions (Apps. G and H) complied with both the Federal Rules of Appellate Procedure (Rule 27(c)) and Local Rules of the Eleventh Circuit (Rule 27-2), the panel ordered the clerk to return them "unfiled." (App. I). As a result, the sabotage of § 144 process, as interpreted by Berger and Womack, was never litigated by any court. This left the recusal decision in the hands of the magistrate court (an Article I court), even though it involved the disqualification of an Article III judge (Judge Pannell).

Undaunted, on May 19, 2014, Kapordelis filed a Petition for Writ of Mandamus at the Eleventh Circuit (to compel Judge Pannell's compliance with § 144 and Rule 4 of § 2255, and to restore the § 2255 Court's jurisdiction so a Rule 60(b) motion could be filed). See In Re Kapordelis, No. 14-12275. (App. J; three parts). Kapordelis argued, among other things, that Judge Pannell's obstruction of recusal procedures (1) stripped him of authority to "proceed further," (2) thwarted a legitimate § 2255 review as required by the Constitution, (3) thwarted

appellate review of the § 2255 proceedings and the magistrate judge's recusal order, and (4) violated § 144, § 636(b), Rule 4 of § 2255, Fed.R.Civ.P. 72, and Article III of the Constitution.

On August 4, 2015, the Mandamus Panel denied the writ. (App. L). In its order, the panel does not dispute that Kapordelis's right to relief is "clear and indisputable." Nor does it dispute that the court's discretion should be exercised in favor of issuance of the writ "as a matter of course," where the district court usurped authority to "proceed further" and issue a final order in the § 2255 proceedings. Instead, the panel denied the writ by faulting Kapordelis for not raising his jurisdictional claim earlier:

> Kapordelis argues that the district court lacked jurisdiction to enter its ruling on his § 2255 motion without first deciding the recusal motion.  To the extent that the district court may have erred in that respect, the error would have been apparent from the day the district court entered its order denying § 2255 relief, and could have been addressed while the COA motion was pending.

(App. L, 2-3).

Kapordelis filed a timely motion for reconsideration of the Mandamus Panel's order. (App. M; withdrawn to proceed with the instant petition for habeas relief, App. O). He argued, among other things, that he did just that! Specifically, he filed his motion to bifurcate the appeal and presented a jurisdictional question therein, only to be ignored for 18-months. He further argued that no jurisdictional problem actually emerged until the Eleventh Circuit refused to conduct a review.

**D. This Action**

Kapordelis filed the instant habeas corpus petition (his first) in Judge Herndon's Court on September 12, 2014, to seek "the first bite at the collateral review "apple" to protect his constitutional rights, whether those rights are provided by the Due Process Clause of the Fifth

Amendment or Article I, § 9, cl. 2 [the Suspension Clause]." (Doc. 1, p. 19). See Kapordelis v. Walton, Case No. 14-cv-1005 (S.D. Ill.). Kapordelis argued he was entitled to a 28 U.S.C. § 2241 review of seven of his original grounds of constitutional error. He claimed entitlement by virtue of the last sentence of § 2255(e), the "savings clause," which permits an application for a writ of habeas corpus under § 2241 by someone who otherwise would be required to use the motion under § 2255 and has failed in that effort, if **"it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."** (Doc. 1, p. 13).

To stress that he was not filing a second or successive collateral petition, but instead seeking a § 2241 review due to a structurally obstructed initial § 2255 proceeding, Kapordelis explained that his circumstances involved:

> ...a rare type of § 2241 case where the inadequacy or ineffec-tiveness of § 2255 to test the legality of detention rests in the fact that the § 2255 Court where relief was initially sought lost its jurisdiction and was unable to issue a valid, final order.

(Doc. 1, p. 1).

### The Structural Defect In The § 2255 Proceeding

To prove the claim of a court stripped of its adjudicatory capa-city, Kapordelis presented evidence to support the following syllogism:

**Premise 1:** Judge Pannell was personally biased and, as such, was not judicially competent to conduct the § 2255 proceedings.

**Premise 2:** Kapordelis filed a timely and sufficient affidavit alleging bias, in conformance with § 144 and Rule 4 of § 2255.

**Premise 3:** Judge Pannell expressly refused to litigate the recusal motion and affidavit in his court, and ceded the recusal decision to the magistrate court the moment he refused to rule on the objections.

**Premise 4:** Judge Pannell's abdication of duty violated § 144, § 636(b), Rule 4 of § 2255, Fed.R.Civ.P. 72, and Article III. (Id., 13).

**Premise 5:** Judge Pannell's abdication also thwarted appellate review of the recusal matter. (Id., 10).

**Premise 6:** 28 U.S.C. § 144 uses imperative language—"the accused judge] shall proceed no further"—and the Eleventh Circuit holds that such language strips the court of its jurisdiction to act. (Id., 16).

**Premise 7:** Binding authority at both the Supreme Court, Berger v. United States, 255 U.S. 22 (1921), and the Eleventh Circuit, United States v. Womack, 454 F.2d 1337, 1341 (5th Cir. 1972), holds that the filing of an affidavit of bias or prejudice of the judge who is to preside at trial, conformably to 28 U.S.C. § 144, **"leaves the judge no duty other than to pass upon the legal sufficiency of the affidavit...."** (Id., at 16)(quoting Womack).

**Conclusion:** Where Judge Pannell refused to litigate the recusal motion and affidavit in his court, "the judge" (obviously referring to the accused judge) was stripped under § 144 of his adjudicatory capacity to do anything else in the § 2255 proceeding. This structural defect prevented any lawful assessment of the original grounds of error and any issuance of a valid, final order under § 2255. (Id., at 20).

### Alleged Basis For § 2255(e) Relief

To establish a coherent basis for savings clause relief under his specific circumstances, Kapordelis emphasized that his access to a § 2241 review "has nothing to do with changes in the law, and, therefore, should not require application of the Davenport factors." (Doc. 1, p. 20)(referring to In re Davenport, 147 F.3d 605, 609 (7th Cir. 1998)). Instead, he argued that the underlying analysis used in Davenport (to determine whether the savings claused applied under those circumstances), should be applied in his unique circumstances. (Doc. 1, pp. 19-20).

Specifically, he embraced the Davenport Panel's rationale that "to determine what adequacy means (or, more realistically, what it should bean)" in any context, "requires determining what the essential function of habeas corpus is and whether it is impaired in the circumstances before us...." Davenport, 147 F.3d at 609. And, where the "essential function" identified in Davenport was **a reasonable opportunity to obtain a reliable judicial determination** of the legality of the conviction and sentence, Kapordelis argued for savings clause access to a § 2241 review because his original grounds of constitutional error were never tested in a § 2255 court of competent jurisdiction.

Kapordelis also argued for savings clause relief based on the general standards identified by the Third and Tenth Circuit Courts of Appeal. See Cradle v. Miner, 290 F.3d 536 (3rd Cir. 2002); Prost v. Anderson, 636 F.3d 578 (10th Cir. 2011). (Doc. 1, p. 21). And, in his summary, he reminded the court that this was "a matter of first impression" where "the Court is tasked to determine if the savings clause [] can apply to criminal defendants in pursuit of relief under § 2241 when the § 2255 court is unable to issue a valid, final order...." (Doc. 1, p. 23).

## D. The Seven Claims of Constitutional Error Not Yet Litigated

In Kapordelis's initial § 2241 brief, he presented detailed arguments in support of his seven claims of constitutional error. (Doc. 1, pp. 25-99). Judge Herndon, however, did not review these claims on the merits, choosing instead to deny § 2241 relief because none of the claims alleged actual innocence or complied with the conditions in Davenport. (S.A. #1, pp. 8-10). As such, Judge Herndon only denied threshold jurisdiction to a § 2241 proceeding.

On this basis, Kapordelis has not argued the merits of his seven grounds of error in this brief, where "lines of text" are precious and must not be wasted on issues not yet ripe.  For the purpose of this appeal, which is to prove that the savings clause should provide for a full § 2241 review, Kapordelis alleges that his seven claims of error clearly comply with the parameters set forth in § 2255(a), as each involves a violation of the Fourth, Fifth, or Sixth Amendments to the U.S. Constitution.  If helpful to the panel, the arguments in Doc. 1 can be adopted in full to provide whatever relief the Court deems appropriate.

## E. The Section 2241 Court's Disposition and Rule 59(e) Proceedings

On October 14, 2014, the § 2241 Court summarily dismissed Kapordelis's petition under Rule 4 of § 2254, and with prejudice (S.A. #1), after concluding:

(1) The stripping of the § 2255 Court's jurisdiction "is not what is meant by inadequate or ineffective." (Id., 9-10).

(2) "Inadequate or ineffective means that a legal theory that could not have been presented under § 2255 establishes petitioner's actual innocence." (Id.).

(3) Kapordelis "does not argue, or even suggest that the charged conduct is no longer a crime, or that he has a legal theory establishing actual innocence which he could not have presented in his § 2255 proceeding." (Id.).

(4) Relief is denied based on the Davenport standard, as "Section 2255(e) was not inadequate or ineffective to test the legality of the conviction or sentence." (Id.).

The § 2241 Court also made several statements of fact which are not supported in the record.

On November 6, 2014, Kapordelis filed a Rule 59(e) motion to alter, amend, or vacate the § 2241 Court's October 14th order. (Doc. 8). In his motion, Kapordelis argued that the Court committed thirteen errors of fact and the following legal errors:

(1) It denied savings clause relief by analyzing Kapordelis's facts based on the wrong standard, where Davenport does not apply in circumstances where a structural defect prevents the initial § 2255 proceeding from being lawfully completed. (Doc. 8, pp. 7-9).

(2) It required "extraordinary claims" such as actual innocence, where ordinary claims of constitutional error suffice under the instant circumstances where Kapordelis seeks his "first bite" at a legitimate collateral proceeding. (Id.)

(3) It failed to address the dispositive implications of Judge Pannell's obstruction of recusal safeguards set forth in § 144, as outlined in Berger and Womack. (Id., 9-10).

(4) It failed to apply the savings clause to Kapordelis's unique facts, or to apply the underlying Davenport rationale (as opposed to the Davenport prongs) to his facts. (Id., 11-18).

(5) It failed to consider the general standards of savings clause application used by the Third and Tenth Circuits, both of which are favorable (although not binding). (Id., 16).

(6) It failed to assess the several constitutional harms that go uncorrected if the § 2241 Court refuses an impartial review of the seven grounds of constitutional error presented. (Id.).

On January 26, 2015, Kapordelis filed a supplement to his Rule 59(e) motion (Doc. 9; and also Doc. 13) in which he argued that it was an abuse of discretion to dismiss the petition summarily under rule 4 (§ 2254), where all the issues are at the very least debatable.

In the meantime, the Seventh Circuit reached an en banc decision in Webster v. Daniels, 784 F.3d 1123 (7th Cir. 2015), which overturned Webster v. Caraway, 761 F.3d 764 (7th Cir. 2014).  In response, Kapordelis filed on May 7, 2015, a second supplement to his Rule 59(e) proceedings (Doc. 10, and also Doc. 14), and argued the following points:

(1) It is clearly erroneous to dismiss the § 2241 petition with prejudice, where the only issue litigated was whether threshold access to § 2241 review is justified under § 2255(e). (Id., 1-3).

(2) The § 2241 Court misconstrues Davenport to hold that only actual innocence claims can justify savings clause relief, and that a case must fit the Davenport mold to succeed, and thus clearly errs when dismissing Kapordelis's case on this basis. (Id., 4-6).

(3) The process for determining savings clause relief (as outlined by the Webster Majority) supports relief given Kapordelis's unique circumstances. (Id., 6-8).

(4) The view of the Webster Dissent—specifically, that savings clause relief is justified "if some application of § 2255 would conflict with the Suspension Clause..."—also supports relief in this case because Kapordelis has not yet experienced a collateral review before a court of competent jurisdiction. (Id., 9-11).

On August 14, 2015, Kapordelis filed a third motion to supplement the Rule 59(e) proceedings. (Doc. 15).  Through this mock appeal brief, Kapordelis more succinctly argued the issues, as if presented on appeal.

In his September 16, 2015, order to deny Rule 59(e) relief and Rule 60 relief (Doc. 16, found at S.A. #2), Judge Herndon denied the third motion to supplement and based his decision on the intial motion (Doc. 8) and the first two supplements (Docs. 13 and 14). In the Memorandum and Order, Judge Herndon concludes that Kapordelis's motion and supplements "point[] to no errors, legal or factual, that dictate a different

outcome to [the] § 2241 petition." (S.A. #2, p. 8). However, nowhere in the memorandum and order is there any analysis of the legal and factual errors complained of, much less a rationale for deeming the complaints summarily without merit. Does Judge Herndon mean to say that Kapordelis presented no actual errors or that the errors presented have no bearing on the summary dismissal of the case?

Even more confusing (and disturbing), the § 2241 Court appears to have come up with a novel basis for denying savings clause relief: It again refused to actually assess Judge Pannell's actions based on § 144 and the holdings in <u>Berger</u> and <u>Womack</u>, choosing this time to conclude the recusal safeguards announced in <u>Berger</u> only apply in criminal proceedings. (S.A. #2, p. 8). It also repeated some of the factual errors that were challenged in the Rule 59(e) motion, as if there never was any challenge that referenced the record to prove the error.

Although there is sufficient justification for filing another Rule 59(e) motion to rebut the errors in the § 2241 Court's new order, Kapordelis suspects that such an effort would only result in another year's delay and an entirely new and infirm reason for not holding Judge Pannell accountable for his sabotage of habeas corpus process. For this reason, this appeal follows.

On September 22, 2015, Kapordelis filed a Notice of Appeal, along with a Docketing Statement. Payment for the appeal was received by the district court on September 29, 2015. (See S.A. #3).

## SUMMARY OF THE ARGUMENT

This appeal determines whether, as a matter of first impression, the savings clause must provide access to a § 2241 review of ordinary grounds of constitutional error, where the § 2255 proceedings were structurally obstructed by a personally biased trial judge who expressly refused to litigate the question of his own impartiality, as the law requires under 28 U.S.C. § 144 and Rule 4 of § 2255.

In Section II of the argument, Kapordelis identifies the legal and factual errors in Judge Herndon's two orders to deny relief. Among the legal errors, there is no support for the proposition that the recusal safeguards set forth in § 144 apply only to criminal proceedings. Indeed, there are four straightforward reasons why § 144 cannot be read to deprive habeas corpus litigants of its protection: First, the statute plainly sets forth application in "all proceedings filed in the district court"; second, the Berger holding acknowledges § 144's governance in criminal and civil cases; third, the Seventh and Eleventh Circuits have repeatedly assessed § 144 applications, on the merits, in § 2255 proceedings; and, fourth, such a narrow application of § 144 would render § 2255 "inadequate or ineffective" on its face. In short, it was error for the § 2241 Court to deny a legitimate application of the savings clause to Kapordelis's unique facts, on this basis.

There is also no support for the § 2241 Court's legal conclusion that only actual innocence claims can trigger savings clause relief, and that the Davenport standard (a standard that was spawned based on the specific circumstances in that case) is the only way to gain savings clause access to a § 2241 review. After all, the saving clause was enacted in 1948, long before AEDPA limited the filing of a second or successive § 2255 petition to the constraints set forth in § 2255(h). Where Davenport only determines § 2255(e) relief when a prisoner

seeks "to get around the bar that the Antiterrorism Act places athwart successive motions under § 2255," it does not control in cases, such as this one, where there is an alleged structural defect in the initial proceedings that renders § 2255 "inadequate or ineffective" to assess the law as it existed when the petition was filed (as opposed to "new law"). Indeed, if a court takes the position that "it's the Davenport way or the highway," some meritorious cases will unjustly fail.

The § 2241 Court also erred legally when it summarily dismissed the petition with prejudice under Rule 4, without government input. And, among the several factual errors identified in Section II(B), it is important to mention here that there is no support for the § 2241 Court's finding that the dispositive issues in this case have already been reviewed, or could have been, by the various courts in Georgia.

In Sections III, IV and V, Kapordelis details why he would have received savings clause access to a § 2241 review of his original claims of constitutional error had there been a proper savings clause analysis based on Judge Pannell's obstruction of recusal safeguards.

In Section III, five crucial predicates are identified: (1) there was a timely-filed and sufficient affidavit alleging bias, and it con-formed in all respects with § 144 and Rule 4 of § 2255; (2) Judge Pannell expressly refused to address the recusal motion and never even mentioned the affidavit of bias (much less assess its sufficiency as the statute requires); (3) the Eleventh Circuit declined jurisdiction to review the magistrate court's recusal order as it stood, i.e., with unresolved objections, despite Judge Pannell's request: (4) the Eleventh Circuit also refused to assess the Berger and Womack claims on the merits; and (5) no Article III judge has ever reviewed the magistrate court's recusal order concerning the disqualification of an Article III judge (Judge Pannell).

Section IV demonstrates that Judge Pannell's refusal to rule on the recusal motion and affidavit of bias violates 28 U.S.C. §§ 144 and 636(b); Rule 4 of § 2255; Fed.R.Civ.P. 72; and Article III of the Constitution. These violations left the § 2255 Court without legal authority to do anything further in the case. This, according to the plain language of § 144 and the binding precedents in Berger and Womack. And, with the § 2255 Court in such a "dissolved" state (jurisdictionally speaking), the original grounds of error were left legally unresolved.

Section V exposes the § 2255 Court, deprived as it was of adjudicatory capacity, as "inadequate or ineffective to test the legality of [Kapordelis's] detention." This is true whether one considers the text of § 2255(a) and § 2255(e); the "essential" or "core" function of habeas corpus which would be sacrificed or undermined without a § 2241 review; persuasive case law involving § 2255 proceedings where the judge's bias was alleged; the general standards used by four Courts of Appeal to determine whether savings clause relief is justified; or, the Supreme Court's explicit holding that § 2255(e) should apply if the failure to conduct § 2241 review would violate the Suspension Clause of the Constitution. As such, savings clause relief is justified.

In his summary (Section VI), Kapordelis argues that habeas corpus must be predicated on a fair and impartial review, no matter the venue. No personally biased tribunal can be found to generate "a reliable determination of the fundamental legality of the conviction or sentence." And, to immunize any personally biased judge—or, worse, to endorse the concept of a biased proceeding by deeming collateral proceedings "off-limits" to legitimate recusal safeguards—mocks everything that habeas corpus represents and morphs the "Great Writ" into something more like a "fake" writ. Seventh Circuit intervention is warranted.

ARGUMENT

## I. Standard of Review

The Seventh Circuit reviews the details of a § 2241 petition de novo. Hill v. Werlinger, 695 F.3d 644 (7th Cir. 2012). Because Judge Herndon's Court did not reach the merits of Kapordelis's seven grounds of constitutional error, this appeal involves only the threshold question of whether Kapordelis is entitled to a § 2241 review based on the exception set forth in § 2255(e), the "savings clause."

Kapordelis is entitled to a § 2241 review if (1) his grounds of error allege "a violation of the Constitution or laws of the United States," 28 U.S.C. § 2255(a), and (2) "the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of the detention," 28 U.S.C. § 2255(e). If it remains unclear whether, based on his particular facts, "ordinary principles of statutory interpretation lead directly to the result that savings clause applies...then the next step would be to take into account the fact that a core purpose of habeas corpus [would be undermined if a § 2241 review did not take place]." Webster v. Daniels, 784 F.3d 1123, 1136-39 (7th Cir. 2015) (en banc).

To remain consistent with the various holdings in the Seventh Circuit which address savings clause relief, "there must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." Id., at 1136. AEDPA makes it vital "to determine whether a previous [§ 2255] petition (or motion) was 'the real thing' that ought to subject the petitioner (or movant) to [the limitations set forth in § 2255(h)]. The essential point is that a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits."

26

Potts v. United States, 210 F.3d 770 (7th Cir. 2000).

## II. The § 2241 Court Committed Several Legal and Factual Errors When Summarily Dismissing Kapordelis's Petition With Prejudice Based On Rule 4 of § 2254, And When Denying Rule 59(e) Relief.

Kapordelis identifies below several legal and factual errors in Judge Herndon's October 15, 2014, order to summarily dismiss the § 2241 petition with prejudice under Rule 4 of § 2254, and his September 16, 2015, order to deny Rule 59(e) relief. (S.A. #1, #2).

### A. Legal Errors

### 1. It is Error to Conclude that 28 U.S.C. § 144 Recusal Safeguards Protect Only Criminal Proceedings, and Not Collateral Proceedings

Judge Herndon escapes the need to evaluate one of the two critical issues in this case—specifically, whether Judge Pannell's structural obstruction of the recusal process under § 144 resulted in the revocation of his jurisdictional authority and rendered him unable to issue a lawful, final order in the § 2255 proceedings—by concluding (without any analysis or explanation) that § 144 does not apply in collateral proceedings. This conclusion is legally erroneous for four reasons, addressed in turn. (S.A. #2, p. 8).

### (a) The Statute Plainly Calls For Application In All Proceedings

In relevant part, 28 U.S.C. § 144 establishes recusal protection in all types of proceedings, not just criminal proceedings:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that a judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party, such judge shall proceed no further therein....

28 U.S.C. § 144 (emphasis added). This language is not in the least bit ambiguous. Congress enacted § 144 as a safeguard for all judicial proceedings for all parties involved, as long as the case or controversy is filed in a district court. Enough said.

(b) The <u>Berger</u> and <u>Womack</u> Holdings Do Not Restrict § 144's Reach
To Criminal Proceedings, Even Though They Involved Criminal
Proceedings

The § 2241 Court ventures unreasonably into unchartered waters
to ignore the dispositive implications of Judge Pannell's § 144 vio-
lation, when concluding that <u>Berger</u> only governs in "those circumstances
under which a judge accused of personal bias should refrain from presi-
ding over a criminal trial." (S.A. #2, p. 8).  Such a constrained view
of <u>Berger</u> has no support in the <u>Berger</u> holding, where the Supreme Court
neither limited nor determined the "types" of case which are controlled
by § 144, when it confronted three specific questions (for purposes of
certification at the Seventh Circuit) not restricted to case type.

Indeed, when the <u>Berger</u> Court explained the legal process that
must follow the filing of an affidavit alleging bias under § 144, it
revealed the broad reach of the statute which § 144 replaced:

> Their declaration is that **"whenever a party to any action or
> proceeding, civil or criminal, shall make and file an affidavit
> that the judge before whom the action or proceeding is to be
> tried or heard...."**

<u>Berger</u>, 255 U.S. at 32-33 (emphasis added).  And, when discussing this
reach, it stated "[t]here is no ambiguity in the declaration, and
seemingly nothing upon which construction can be exerted,—nothing to
qualify or temper its words or effect. It is clear in its permission
and direction." <u>Id</u>.  Judge Herndon has no legal basis to qualify or
temper the specific language used by Congress, especially where the
High Court acknowledged its clarity and precision.

Where § 144 retains the language "in any proceeding," and where
the <u>Berger</u> decision never signals any limitation with respect to § 144's
reach "in any action or proceeding, civil or criminal," there is no
legitimate basis to conclude that <u>Berger</u> speaks only to recusal protec-
tion in criminal proceedings.  Importantly, the Eleventh Circuit has

specifically identified § 2255 proceedings as civil in nature. <u>See</u>
<u>Brown v. United States</u>, 748 F.3d 1045, 1065 (11th Cir. 2014).
Although there is limited support for the proposition that § 2255
is a criminal matter, or at least not purely civil in nature, this
support is "not sufficient to alter the nature of § 2255 proceedings."
<u>Id</u>.

In sum, whether § 2255 proceedings are civil or criminal, § 144
offers its protection to the integrity of the processes therein.

### (c) The Eleventh and Seventh Circuits Have Already Applied § 144 in § 2255 Proceedings and Evaluated Claims on the Merits

If § 144's recusal protections were not available to § 2255 liti-
gant's, there would not be at least a dozen cases in several federal
jurisdictions where a § 144 affidavit was reviewed—on the merits—in
§ 2255 proceedings.  Rather than identify all the cases available to
prove this point, only the binding cases are presented.

In <u>Morrison v. United States</u>, 432 F.2d 1227, 1229 (5th Cir. 1970)
(binding on Eleventh Circuit pursuant to <u>Bonner v. Prichard</u>, 661 F.2d
1206, 1209 (11th Cir. 1981)(<u>en banc</u>)), it was determined that "the
affidavit was insufficient and...[the] denial was correct."  In <u>Cintron</u>
<u>v. United States</u>, 401 Fed. Appx. 485 (11th Cir. 2010), the panel con-
cluded in a § 2255 proceeding that Mr. Cintron "failed to meet the
statutory requirements to warrant recusal under 28 U.S.C. §§ 455(a)
and 144....".  Clearly, § 144 process is available in § 2255 cases.

Likewise, the Seventh Circuit deems § 144 claims justiciable in
§ 2255 proceedings. <u>See</u> <u>Tezak v. United States</u>, 256 F.3d 702, 718
(7th Cir. 2001)("There was no showing of a personal motive or discrimi-
natory prejudice on [the] judge's part" based on § 144 in a § 2255
proceeding); <u>Brocksmith v. United States</u>, 1997 U.S. App. LEXIS 1841
(7th Cir. 1996)(Section 144 motion and affidavit were evaluated on

the merits; judge's comments "were not so extreme as to indicate that
[he] could not fairly adjudicate Brocksmith's § 2255 motion").

Given these binding precedents on the matter, there is no support
for the § 2241 Court's view that § 144 fails to protect § 2255 litigants.

**(d) 28 U.S.C. § 2255 Cannot Be Read So As To Exclude § 144 Pro-
tection Because Such a Reading Renders § 2255 "Inadequate
or Ineffective" For This Reason Alone**

It is understandable that Judge Herndon does not want to hold
Judge Pannell accountable for his personal bias and sabotage of the
§ 2255 proceeding in this case. This does not justify, however, the
effort to deny all § 2255 litigants the structural guarantee of an
impartial venue through § 144 safeguards. How can there exist "a
reasonable opportunity to obtain a reliable judicial determination
of the fundamental legality of [a prisoner's] conviction or sentence,"
Davenport, 147 F.3d at 609; Webster, 784 F.3d at 1138, if there
is no credible process by which a trial judge shown to be personally
biased can be disqualified from § 2255 proceedings?

The Federal Rules of Procedure for § 2255 were approved by Congress
and the Supreme Court, and were prescribed pursuant to 28 U.S.C. § 2072.
This section governs "Judiciary and Judicial Procedure," and holds
valid all statutes which do not conflict with the rules or procedure.
Where Rule 4 of § 2255 specifically addresses (in the commentary) the
filing of an affidavit of bias to disqualify the trial judge from the
proceedings—"There is a procedure by which the movant can have a
judge other than the trial judge decide his motion in courts adhering
to the majority rule. He can file an affidavit alleging bias in order
to disqualify the trial judge."—there is no legitimate basis to con-
clude that § 144 (which concerns recusal/disqualification) conflicts
with the rules and must be deemed void. Indeed, at least one federal

court in the Seventh Circuit's jurisdiction has deemed Rule 4's process as the process outlined in § 144. See Jordan v. United States, 2008 U.S. Dist. LEXIS 29534 (C.D. Ill., 2009)(Judge McCuskey construed a "Petition for Affidavit of Bias in Pursuit to 28 U.S.C. § 2255, Rule 4" as filed under 28 U.S.C. § 144).

Various courts have relied upon the availability of the remedial process under § 144 to deny savings clause relief in cases where only personal bias is alleged (i.e., where there is no evidence of sabotaged or obstructed § 144 process). See, e.g., Tripati v. Henman, 843 F.2d 1160, 1163 (9th Cir. 1987)(denying § 2255(e) relief because "Appellant has a remedy available by way of a motion for recusal or disqualification [through 28 U.S.C. §§ 455 and 144 and Rule 4 of § 2255]"); Charles v. Chandler, 180 F.3d 753, 757-58 (6th Cir. 1999) (per curiam)(citing Tripati, 843 F.2d at 1163, with approval); Bradshaw v. Story, 86 F.3d 164, 167 (10th Cir. 1996)("[E]ven if Bradshaw's § 2241 petition did establish bias, § 2255 would still be adequate because he could move to recuse the sentencing judge. See 28 U.S.C. §§ 144, 455."); Lavi v. United States, 800 F.Supp.2d 194, 196 (S.D. NY, 2000)("Because Lavi may submit an affidavit of bias with the sentencing court, he has failed to establish that relief pursuant to Section 2255 is not available in that court."). Where Kapordelis's remedy under § 144 and Rule 4 of § 2255 was obstructed structurally (i.e., by the court, through no fault of his), some other remedy must be made available. Whether one evaluates Judge Pannell's obstruction or Judge Herndon's erroneous reading of § 144, the remedy provided by § 2255 cannot be considered remotely adequate or effective if isolated from the recusal process established by § 144.

In summary, Judge Herndon legally errs when concluding that § 144 does not govern in collateral proceedings.

2. **The § 2241 Court Erred Where it Failed to Conduct a Savings Clause Analysis Based On Kapordelis's Unique Facts, And Instead Held That No Relief Was Justified Unless There Were Claims of Actual Innocence and the Davenport Standard Was Met**

Rather than apply the savings clause to Kapordelis's unique facts to determine if the § 2255 proceedings were "inadequate or ineffective to test the legality of [his] detention," Judge Herndon summarily dismissed the instant petition on the following grounds:

> Kapordelis argues that the district court's failure to address his objections to the recusal decision of the magistrate judge deprived the district court of jurisdiction over the proceeding and rendered § 2255 inadequate or ineffective. But this is not what is meant by "inadequate or ineffective."
>
> "'Inadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'"
>
> ***
>
> In order to fit within the savings clause under Davenport, a petitioner must meet three conditions [set forth therein].

(S.A. #1, pp. 8-10).

When alleging error in his Rule 59(e) motion, Kapordelis stated that the court erroneously escaped a legitimate savings clause analysis by:

> (1) applying the wrong standard, i.e., the Davenport prongs, to foreclose § 2241 review, [where] those prongs govern second or successive [petitions for collateral relief]; (2) ignoring the fact that an affidavit of bias was filed in compliance with § 144 and Rule 4 of § 2255, and that authority was revoked under Berger given that Judge Pannell refused to assess the affidavit; and (3) escaping any analysis of serious constitutional violations which emerge when a magistrate is allowed to usurp authority to rule on an Article III judge's recusal without review, or when a district judge usurps authority to issue a final order in a § 2255 proceeding after his authority is revoked.

(Doc. 8, 2-18).

In his Rule 59(e) order, Judge Herndon summarily ignores all these claims, to conclude: "Kapordelis points to no errors, legal or factual, that dictate a different outcome to his § 2241 petition ....Instead, he asks this Court to carve out new law that will allow

32

him to pursue relief under § 2241 The Court cannot do so." (S.A. #2, pp. 7-8).

On appeal, Kapordelis stresses that he <u>does</u> <u>not</u> seek "new law" in the sense of a new statute that will grant new access to § 2241 review for federal prisoners.  Instead, he seeks a fair and just application of the savings clause to his unique facts, just like the defendants in <u>Davenport</u> and <u>Webster</u>.  The § 2241 Court errs when it insists that it is "the <u>Davenport</u> way or the highway" (Doc. 8, p. 12). and the gentle language in <u>Webster</u> explains why:

> It is true that in describing <u>Davenport</u> [in <u>Unthank</u> and <u>Taylor</u>] we used more general language that could be read as an absolute restriction on the savings clause, but in neither of those cases did the court have before it an argument that a particular sentence was constitutionally forbidden (either as a matter of law or as a matter of fact), rather than just outside the scope of the statute.  **We therefore think it best to understand those holdings as appropriate applications of the law to the facts before the court.**

<u>Webster</u>, 784 F.3d at 1137 (emphasis added).

There is no question that <u>Davenport</u> is good law in the Seventh Circuit, but it has its place.  When someone seeks savings clause relief after one completed round of § 2255 review, and he alleges new law that proves actual innocence or some other fundamental defect in his conviction or sentence, it is proper to require that the "new law" involves statutory interpretation and is made retroactive by the Supreme Court, and that it could not have been challenged during the initial § 2255 proceeding.  In short, the <u>Davenport</u> standard controls in such a case and it should be met before the savings clause opens the portal to § 2241 review.

Kapordelis's circumstances, however, are unique, and they warrant a fresh application of the savings clause for the following reasons: (a) <u>Davenport</u> is inapposite; (b) actual innocence is not absolutely required for relief; (c) Section 2255(e) provides for relief here.

### (a) <u>Davenport</u> Is Inapposite In Kapordelis's Circumstances

As explained in Kapordelis's Rule 59(e) motion (Doc. 8, pp. 7-10), <u>Davenport</u> does not control the outcome in his case because it applies only in second or successive petitions, not structurally defective initial petitions which never ended in a lawful, final order disposing of the claims of error originally presented:

> The principal question we must decide is when if ever a federal prisoner can use the habeas corpus statute, 28 U.S.C. §§ 2241-2254, to get around the bar that the Antiterrorism Act places athwart successive motions under 28 U.S.C. § 2255, the federal prisoner's habeas corpus substitute.

<u>Davenport</u>, 147 F.3d at 607 (emphasis added). Far from a second or successive petition, Kapordelis seeks his first legitimate round of collateral review under § 2241 because he was unable to obtain this review in the § 2255 Court where he initially presented. Judge Herndon factually errs when he states "It also **appears** as though Kapordelis **may be** bringing this petition under § 2241 in an attempt to avoid the procedural requirements for bringing a successive petition under § 2255(h)." (S.A. #1, p. 8). Kapordelis is presenting the claims that were presented in the § 2255 proceeding which was structurally defective. He is seeking relief based on the same law that existed when the original claims were filed in Georgia, but never lawfully resolved.

When it denied relief to Mr. Davenport, the Seventh Circuit noted, "nothing in 2255 made the remedy provided by that section inadequate to enable [him] to test the legality of his imprisonment. He had an unobstructed procedural shot at getting the sentence vacated." <u>Davenport</u>, 147 F.3d at 609. There is a good reason why Davenport had to meet "extraordinary" conditions to earn a second round of collateral review: "The amended section 2255 gives a convicted defendant only one further bite at the apple after his direct appeal unless he can demonstrate a compelling reason...for a third bite....We do not think

it plausible that the Constitution requires more []." Id. at 610.

Kapordelis agrees. And, where he seeks his first round of collateral review in a court of competent jurisdiction, he should not be required to present anything more than "ordinary" claims of constitutional error such as the seven claims in his petition.

There is no basis to suggest that the savings clause exists only to save those cases that are unconstitutionally prejudiced by the constraints set forth by the AEDPA in § 2255(h), i.e., cases which necessarily involve second or successive petitions. After all, the savings clause was enacted in 1948, long before AEDPA was conceived. Although Davenport deals with rare "branches" of savings clause relief that extend to prisoners seeking their second round of collateral review, this does not prevent other branches from extending to prisoners when initial § 2255 proceedings are structurally encumbered. See Potts v. United States, 210 F.3d 770 (7th Cir. 2000)(a petitioner seeking collateral relief "is entitled to one unencumbered opportunity to receive a decision on the merits"). Kapordelis has yet to receive such an opportunity, and this takes him out of Davenport's wheelhouse. If Davenport is imported at all in the instant case, it should be to apply the underlying rationale where the definition of "adequate" arose.

Importantly, Webster v. Daniels, Brown v. Caraway, and Garza v. Lappin would not have earned any relief without a fresh § 2255(e) analysis of facts in each petition. What is more, consider a hypothetical 2241 where a prisoner complains that his sentencing judge expressly refuses to adjudicate his timely-filed § 2255 application, and where the docket shows that there has been no action since the case was filed. Applying these facts to the Davenport standard (as opposed to conducting a savings clause analysis based on the facts before the court) would yield no relief. However, a proper savings

35

clause analysis would likely lead to a grant of relief. See Stirone v. Markley, 345 F.2d 473, 475 (7th Cir. 1965)(We are "not prepared to say that a refusal to entertain a section 2255 motion [] would not invoke the exception to the section's remedial exclusiveness").

Consider also cases where a sentencing court actually "dissolves," and is no longer available for a collateral review. See Spaulding v. Taylor, 336 F.2d 192, 193-94 (10th Cir. 1964)("the defendant's sentencing court [had] been abolished by the time the prisoner sought to bring his collateral attack," making the remedial mechanism "necessarily inadequate and ineffective...."); Ackerman v. Novak, 283 F.3d 647, 649 (10th Cir. 2007)(involving a court martial proceeding where the sentencing court "literally dissolves after sentencing and is no longer available to test a prisoner's collateral attack"); Prost v. Anderson, 636 F.3d 578 (10th Cir. 2011)(deciding savings relief is proper when the opportunity for § 2255 is "genuinely absent"). If Kapordelis is correct when alleging that Judge Pannell's court lost jurisdiction due to his bias and refusal to litigate the recusal issue as required, then his court was "genuinely absent" and triggered savings clause relief, just like that granted to Mr. Spaulding and Mr. Ackerman. If the court takes the "its the Davenport way or the highway" approach, some well-deserving cases will be denied the access they deserve.

In summary, its not about applying Kapordelis's facts to Davenport and denying relief; it is about conducting a savings clause analysis based on these facts and determining whether it triggers the exception.

**(b) The Savings Clause Is Not Limited To Actual Innocence Claims**

In his Rule 59(e) motion, Kapordelis argued that there was no basis to hold that only actual innocence claims trigger the savings clause exception, as Judge Herndon concluded. (Doc. 8, 7-9). Once the

decision was reached in <u>Webster</u>, Kapordelis bolstered his position by citing to the <u>en banc</u> panel's specific comments on the subject. (Doc. 14, 4-6). To be clear, the <u>Webster</u> Panel rejected the government's argument that "Congress did not intend to permit the savings clause to be used for anything other than claims of actual innocence of the underlying offense." <u>Webster</u>, 784 F.3d at 1139-40. It did this by pointing to the Solicitor General's comments in <u>Persaud v. United States</u>, 134 S. Ct. 1023 (2014)(mem.), which is to the contrary; by noting that <u>Garza</u> did not involve actual innocence of the offense; and, by granting potential savings clause relief to Mr. Webster, whose claim only involved his sentence of death. <u>Id</u>.

In sum, Judge Herndon erred when holding that only actual innocence claims can trigger savings clause relief, and when dismissing Kapordelis's petition in large part on this basis.

### (c) The Savings Clause Applies In Cases Where There Is A Structural Defect In The Initial § 2255 Proceedings

As adequately explained <u>supra</u>, the savings clause was never meant to apply only in second or successive petitions for collateral relief. The fact that <u>Davenport</u> and its progeny addressed second or successive petitions provides no basis for the § 2241 Court's refusal to apply the savings clause to Kapordelis's facts. As argued in the subsequent sections of this brief, the unique facts in this case justify savings clause access to a § 2241 review.

### (d) Summary

The § 2241 Court is flat wrong when concluding that Kapordelis "points to no errors, legal or factual." It **was error** to escape a savings clause analysis of Kapordelis's facts through the premise that § 144 applies only in criminal cases. It **was error** to escape a savings clause analysis by insisting on actual innocence claims and compliance

with the standard in <u>Davenport</u> which was based on the facts in the
two cases presented therein.  It was error to presume that the savings
clause does not apply in cases where the initial § 2255 proceedings were
structurally defective.  Did these errors affect the outcome in this
petition?  The analysis provided in Sections III, IV and V, <u>infra</u>,
indicate that the answer is yes.

## 3.  The § 2241 Court Errs By Dismissing the Petition With Prejudice

The record is clear: the § 2241 Court never confronted any of
the underlying claims of constitutional error presented in Kapordelis's
petition.  As argued in the second supplement to the Rule 59(e) motion
(Doc. 14, 1-3), it was error to dismiss the § 2241 petition with
prejudice.

The support for a "with prejudice" dismissal most likely was
extracted from the holding in <u>Webster v. Caraway</u>, 761 F.3d 764, 770
(7th Cir. 2014)("We conclude that § 2255(e) does not control subject-
matter jurisdiction....")(overruled by <u>Webster v. Daniels</u>).  <u>Webster</u>
<u>v. Daniels</u>, however, seems to suggest that § 2255(e) is a threshold
jurisdictional question, where it states, "[t]he question before us is
whether petitioner Bruce Webster has presented a case [where § 2255(e)
opens the gateway to a § 2241 review].  If so, then he may proceed to
the merits; if not, then his case must be dismissed at the threshold."
<u>Id</u>., 784 F.3d at 1124.  This language is fairly consistent with the
dicta in <u>Garza v. Lappin</u>, 253 F.3d 918, 921 (7th Cir. 2001), where it
was said, "If Garza can show that his petition fits under the narrow
exception [in the savings clause], then...the district court had juris-
diction to consider the habeas petition...."

Although the courts of appeal have not addressed this issue at
length, the great weight of authority suggests the savings clause is

jurisdictional in nature.  See Rice v. Rivera, 617 F.3d 802, 806

(4th Cir. 2010)(where the court termed the savings clause question

"a jurisdictional issue"); Wooten v. Cauley, 677 F.3d 303, 306 (6th

Cir. 2012)(analyzing whether "[t]he use of the savings clause to

establish jurisdiction" renders the resulting § 2241 petition subject

to § 2255's statute of limitation); Harrison v. Ollison, 519 F.3d 952

(9th Cir. 2008)("Because Harrison has not established that his peti-

tion is a legitimate § 2241 petition brought pursuant to the escape

hatch of § 2255, we do not have jurisdiction under § 2241 to hear his

appeal."); Hill v. Morrison, 349 F.3d 1089, 1091 (8th Cir. 2003)(the

savings clause "provides the court of incarceration as having subject-

matter jurisdiction under § 2241 over a collateral attack on a convic-

tion or sentence"); Cephas v. Nash, 328 F.3d 98, 105 (2d Cir. 2003)

("[W]here...petitioner invokes § 2241 jurisdiction to raise claims

that clearly could have been pursued earlier...then the savings clause

is not triggered and dismissal for lack of jurisdiction is warranted.");

Williams v. Warden, 713 F.3d 1332, 1337 (11th Cir. 2013)(chronicling

the aforementioned cases and concluding that the applicability of

§ 2255(e) "is a threshold jurisdictional issue and we cannot reach

questions that the district court never had jurisdiction to entertain").

    Where the § 2241 Court did not address this issue in its September

15, 2015, order, the Seventh Circuit is asked to do so if relevant to

the outcome.  Where savings clause access is just, the issue is moot.

## 4. The § 2241 Court Errs by Summarily Dismissing Kapordelis's Petition Under Rule 4 of § 2254

    As argued in the Rule 59(e) supplement (Doc. 13), it was error to

summarily dismiss the petition without a governmental response under

Rule 4 (§ 2254).  In short, there is no way it "plainly appears from

the petition and any attached exhibits that the petitioner is not

entitled to relief in the district court....", because the disposi-
tive issues in the case are, at the very least, debatable.  As such,
a governmental response should have been ordered.

Specifically, it is debatable whether the savings clause should
extend in cases where the trial judge is personally biased and refuses
to litigate the question of his forced disqualification under Rule 4
of § 2255 and § 144 of Title 28.  It is also debatable whether savings
clause relief is limited only to those cases which satisfy the Davenport
standard, to include the requirement for actual innocence of the convic-
tion at base.  Finally, it is reasonable to assume that Judge Herndon's
view of § 144's reach is debatable in the minds of anyone who speaks or
reads English.  A summary dismissal did nothing more than drag the
appellate court into a case before it could be properly vetted.

### B. Errors of Fact

The § 2241 Court made a large number of clear factual errors in
its two rulings (S.A. #1, #2).  None of the errors in the first ruling,
i.e., those which were complained of in the Rule 59(e) motion (Doc. 8, pp.
19-30), were addressed in the second ruling.  Indeed, some of the ini-
tial errors were actually repeated in the Rule 59(e) order.

To keep this memorandum "briefer than not," Kapordelis addresses
below the errors which matter.  Errors not presented remain errors.

### 1. Kapordelis Does Support His Webster v. Daniels Claims in His Motion

The § 2241 Court states that "Kapordelis has not cited new evi-
dence or explained how Webster affords him relief under § 2241." (S.A.
#2, p. 9).  This is not true.

In his second supplement (Doc. 14, pp. 3-11), Kapordelis advanced
the Webster opinion in support of the following arguments:

40

(a) Although no dismissal was justified, it should not have been with prejudice since only § 2255(e) access was decided.

(b) The Majority Opinion supports relief under Rule 59(e) because it establishes that (i) Section 2255(e) is not limited to actual innocence claims; (ii) Section 2255(e) is not limited to facts which comport with the conditions in <u>Davenport</u>; and, (iii) had the § 2241 Court conducted a fresh, step-by-step analysis based on Kapordelis's facts, savings clause relief would have been granted.

(c) The dissent's view also supports relief in this case, where the failure to conduct a § 2241 review would result in a violation of the Suspension Clause in Article I of the Constitution. Although Webster's holding is fairly narrow, its reasoning—especially with respect to the steps necessary to determine whether savings clause relief should be given—is priceless.  Had Judge Herndon simply applied the steps, relief would be required.  (See Sections III, IV and V).

## 2. The Dispositive Issues In This Case Were Not Previously Litigated

In its initial order to dismiss, the § 2241 Court found that the recusal decision had been "reviewed countless times." (S.A. #1, p. 9). This fact was rebutted in Kapordelis's Rule 59(e) brief:

> [T]he record clearly reveals that neither the district court nor the court of appeals <u>ever</u> assessed Petitioner's timely affidavit of bias to determine sufficiency, which explains why the § 2241 Court cannot identify <u>any</u> actual review in the record.

(Doc. 8, 23).  In response, a new "fact" emerged in the Rule 59(e) order (S.A. #2, p. 8) which is equally unsupported: "Kapordelis already had an opportunity to present his arguments in a direct appeal and in his post-conviction proceedings."

The record is clear: (1) the underlying issue which should trigger

savings clause relief is the obstruction of recusal safeguards by a
biased trial judge—an event which occurred DURING § 2255 proceedings;
(2) this issue could not have been raised on direct appeal because it
had not surfaced until long after the appeal was over; (3) Kapordelis
tried to have the issue resolved in the district court, but Judge
Pannell refused (a fact established by his order punting the issue to
the Eleventh Circuit); (4) the Eleventh Circuit refused to review the
fatal jurisdictional consequences of the § 144 violation when it
returned Kapordelis's Berger and Womack claims "unfiled."

When the § 2241 Court refers to Kapordelis's "post-conviction
proceedings," it makes it appear as if these were valid proceedings
which ended in a lawful, final judgment under § 2255(a).  The crux of
Kapordelis's argument for savings clause relief is that there was no
lawful, final judgment because Judge Pannell was stripped of his adju-
dicatory capacity.  Only when this issue is confronted can one deter-
mine whether there was (or was not) a § 2255 proceeding which can be
deemed an adequate substitute for habeas corpus.

## 3. Judge Pannell Expressly Refused to Litigate the Recusal Matter

Kapordelis was explicit with respect to Judge Pannell's handling
of the recusal issue: He alleged (and corroborated by way of Judge
Pannell's order) that Judge Pannell expressly refused to litigate the
objections to the magistrate court's order to deny recusal and never
addressed the sufficiency of the affidavit of bias in his court. (Doc.1,
p. 6; Doc. 8, pp. 10, 24).

However, the § 2241 Court repeatedly "waters down" this allegation
in its two orders, referring to it once as "Kapordelis claims that
these objections [to the magistrate's recusal order] were never squarely
addressed by the district court." (S.A. #2, p. 3).  To be clear: there is

42

absolute proof in the record that Judge Pannell refused to exercise his jurisdictional duties under Rule 4 of § 2255 and 28 U.S.C. § 144, and absolute proof that the Eleventh Circuit expressly refused to accept jurisdiction (on April 8, 2014) to either assess the affidavit or rule on the objections.  There is no "play" in these facts.

**4. This § 2241 Petition Does Not Seek to Remedy a "Bad Outcome." It Seeks to Remedy a Structurally Defective § 2255 Proceeding Which Foreclosed Any Lawful Disposition in the Original Claims of Error.**

Judge Herndon held that Kapordelis's "lack of success in his direct appeal and post-conviction proceedings does not render § 2255 inadequate or ineffective to test the legality of his detention." (S.A. #2, p. 8).  This statement reflects, if anything, a gross misunderstanding of this case and what it seeks to repair.

Kapordelis's basis for alleging § 2255's inadequacy or ineffectiveness has nothing to do with the direct appeal, as the structural defect emerged during the § 2255 proceedings.  As for any adjudication of the recusal matter <u>during</u> the § 2255 proceedings, one of the dispositive issues in this case concerns the stripping of the § 2255 Court's authority to proceed further <u>because</u> the recusal issue was ignored. Yes, there was a "lack of success" in the post-conviction proceedings, but the failure was a structural defect that poisoned the proceedings, not a bad outcome like the one Mr. Taylor complained of in <u>Taylor v. Gilkey</u>, 314 F.2d 832 (7th Cir. 2002)(see argument in Statement of Jurisdiction).  This is a distinction that makes a huge difference.

### C. Summary of Section II

Had it not been for all these factual and legal errors, the outcome of the § 2241 proceedings would have been different because a credible savings clause analysis would have opened the portal to a § 2241 review.  Sections III, IV, and V, <u>infra</u>, explain precisely why.

## III. Five Crucial Predicates to the Legal Arguments Which Follow

There are five important points that must be understood before determining whether (1) Judge Pannell's Court was stripped of its jurisdiction and could not assess the underlying grounds of error or issue a final judgment disposing of them; and, (2) this rendered § 2255 inadequate or ineffective when it comes to determining the legality of Kapordelis's conviction and sentence, thus triggering § 2255(e) relief.

### A. The Recusal Motion and Affidavit Were Timely Filed, Conformed With § 144 of Title 28, and Sufficiently Alleged Personal Bias

Kapordelis's Motion to Recuse and Affidavit of Bias conformed in all respects to the strict requirements set forth in § 144.  There is no evidence or claim to the contrary.  As detailed in the sworn affidavit, Judge Pannell's personal and pervasive bias is founded on many distinct and well supported allegations, one of which is sufficient to disqualify him: He exposed a homophobic predisposition and bigoted agenda during the sentencing hearing, under the guise of the parity analysis set forth in 18 U.S.C. § 3553(a)(6).

Where § 3553(a)(6) authorizes a district judge to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," Gall v. United States, 169 L.Ed. 2d 445, 460 (2007), Judge Pannell was bent to compare Kapordelis's lawful, private, homosexual-sexual conduct in Prague (404(b) evidence unrelated to criminal activity or the counts of conviction) to the intended rape of a four-year old female toddler by the defendant in United States v. Scott, 426 F.3d 1324, 1325 (11th Cir. 2005).  This comparison violates § 3553(a)(6), because it is between Mr. Scott's criminal conduct when traveling to rape a toddler and Kapordelis's lawful conduct when traveling to Prague to engage in private, consensual gay-sex with individuals of legal age to participate.

44

The legality of the comparison aside, Judge Pannell exposed his homophobic bias once he deemed the legal, gay sex more condemnable than heterosexual child rape. Worse, he morphed his homophobic bias into a bigoted agenda when he substantially <u>increased</u> Kapordelis's prison term on this basis, despite having <u>reduced</u> Mr. Scott's prison term by the same degree. (Doc. 546, Recusal Motion and Affidavit; Doc. 560, Objections to Magistrate Brill's order to deny recusal—App. R).

"To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." <u>Christo v. Padgett</u>, 223 F.3d 1324, 1333 (11th Cir. 2000). In <u>Liteky v. United States</u>, 510 U.S. 540 (1994), the Supreme Court explained that:

> [N]ot all unfavorable disposition towards an individual (or his case) is properly described by the terms [bias or prejudice. Rather,] the words connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess..., or because it is excessive in degree....

<u>Id.</u>, at 550. Bias can be shown if a judge's remarks or opinions reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." <u>Id.</u>, at 555. Here are Judge Pannell's own words when he compared Kapordelis's legal conduct to the crime of toddler rape:

> <u>The Court</u>: I have touched on parity with other sentences I have imposed on defendants who travel in interstate commerce to have sex with a child for one time have received sentences of ten years or more. **[Kapordelis] was very conscious of what he was doing was wrong. He checked on the laws of the various countries over and over to make sure of that, or tried to figure out that he was—would be, quote, legal.**

(Sent.Tr., p. 322)(emphasis added).

Irrespective of the source of extrajudicial antagonism Judge Pannell had to recall, in his mind, to deem Kapordelis's legal gay sex "wrong," he was clearly intent on comparing that legal gay sex to Mr. Scott's crime of attempted child rape. Indeed, Judge Pannell not only believed

that legal gay sex was more condemnable than child rape, but felt it

his duty to increase Kapordelis's prison term on this bigoted basis:

> The Court: Well, the Court is going to grant the government's
> motion for an upward departure....[I] have sentenced defendants
> ten years in this court for simply crossing state lines one
> time on the fault that they were getting ready to have sexual
> adventures with children, and I believe those sentences generally
> average around ten years.  And I know I may be confusing some of
> them with just downloading child pornography.  But, if those
> sentences are, or those crimes are worth ten years, then this
> offense is worth much more than the guideline calculation comes
> up with.

(Sent.Tr., p. 322).

Judge Pannell's sentencing insanity betrays any possibility he

could render a fair or impartial judgment where Kapordelis is concerned.

To be clear, the sexual conduct in Prague was lawful according to both

Czech Republic and U.S. federal law.  See 18 U.S.C. § 2423(b)(making it

a crime to travel in foreign commerce for the purpose of having sexual

relations with a person under the age of 16 (18, if a commercial act)).

Yet, despite its legality, Judge Pannell was moved to increase Kapor-

delis's term of imprisonment on this basis.

Because Kapordelis's sexual conduct in Prague was consensual,

private, and with persons over the age of legal consent, the Supreme

Court's holding in Lawrence v. Texas, 156 L.Ed.2d 508 (2003), is the

only "judicial source" of information that Judge Pannell should have

considered for the purposes of sentencing on this basis.  And, where

the Lawrence Court held that it violates substantive due process rights

to punish consensual, private, homosexual-sexual conduct by as much as

a fine, Judge Pannell clearly embraced an "extrajudicial source" (albeit

unidentified) to deem Kapordelis's gay sex somehow "wrong" and worthy

of a substantially increased term of imprisonment. See also, Borden-

kircher v. Hayes, 434 U.S. 357, 363 (1977)("To punish a person because

he has done what the law plainly allows him to do is a due process

violation of the most basic sort, and for an agent of the State to
pursue a course of action whose objective is to penalize a person's
reliance on his legal rights is patently unconstitutional.")(internal
quotation marks and citations omitted).  Put simply, Judge Pannell
could no  more imprison an American citizen for engaging in gay sex
than he could for marrying outside one's race.

In Magistrate Brill's order to deny recusal, she faults Kapor-
delis for failing to make a showing of pervasive bias, as follows:

> Although he alleges "homophobia" (on the part of Judge Pannell),
> he makes no showing that either judge made any discriminatory
> remarks.  Instead, he attacks the judge's rulings....

(App. Q, 4).  However, Judge Pannell's "deep seated antagonism" rests
not in any particular slur or comment; it rests in his bent comparison
and bigoted disposition to act on the belief that legal gay sex somehow
justifies a deprivation of freedom.  As Kapordelis stated in his objec-
tions to Magistrate Brill's order (App. R, 1), he need not point to
a biased "remark" when there is proof of a bigoted act which is predi-
cated on a homophobic inclination or opinion.

From a legal perspective, judges who are personally bent to deem
lawful homosexual-sexual conduct worthy of imprisonment and more con-
demnable than heterosexual toddler rape (this was Judge Pannell's con-
clusion) manifest **an unfavorable disposition or opinion that is somehow
wrongful or inappropriate, [both] because it is undeserved [and] rests
upon knowledge that the subject ought not to possess."** Liteky, 510
U.S. at 550.  Moreover, any judge who is willing to import this type
of extrajudicial opinion into the sentencing process to deprive a
person of his freedom **"reveals such a high degree of [] antagonism
as to make fair judgment impossible."** Id., at 555. On this basis alone,
Kapordelis "has alleged facts that would convince a reasonable person

that bias actually exists." Christo, 223 F.3d at 1333.

In sum, Judge Pannell's disqualification is justified even if his biased predisposition was revealed during judicial proceedings. Where Magistrate Brill denied relief (without authority) by finding that Judge Pannell made no "discriminatory remarks" (supra), she failed to realize that discriminatory opinions—such as Judge Pannell's belief that legal gay sex is worse than child rape—are also actionable.

**B. Judge Pannell Refused to Litigate the Recusal Safeguards In His Court**

On September 26, 2012, Judge Pannell issued an order refusing to conduct a review of Kapordelis's objections to Magistrate Brill's order to deny recusal. (App. H; also at App. U).  He also refused to litigate the sufficiency of the affidavit alleging bias, in his court.

Instead, Judge Pannell transferred his supervisory duties over the magistrate court, to the Eleventh Circuit.  Although no COA is required to obtain appellate review of a properly litigated recusal order (see argument infra), Judge Pannell's order can be fairly interpreted as a COA for supervisory review of Magistrate Brill's order, the objections thereto, and the sufficiency of the affidavit of bias.

**C. The Eleventh Circuit Conducted NO REVIEW of the Recusal Matter**

Through its 18-month delayed order addressing Kapordelis's Motion to Bifurcate (a motion which presented a question of jurisdiction with respect to the magistrate court's recusal order and the pending objections), the Eleventh Circuit declined jurisdiction to review the matter. It did this despite Judge Pannell's explicit request and despite the fact that no COA is required to conduct an appellate review.

As Kapordelis argued in his Motion to Bifurcate (App. G, 3-5) and his Petition for Writ of Mandamus (App. N, 23-25), no COA is needed based on authority in the Eleventh Circuit and other circuits.  See

*Iacullo v. United States*, 463 Fed. Appx. 896 (11th Cir. 2012)(agreeing to review the magistrate judge's recusal recommendation <u>after</u> the district court adopted it, even though no COA was issued with respect to the § 2255 claims of error; concluding that the recusal decision is not moot (as the government argued) in the wake of a COA denial because, "if we can determine that [Judge] White should have recused himself, we can grant relief by reversing the district court's judgment and ordering that he not be assigned to White on remand."); <u>United States v. Carrol</u>, 380 Fed. Appx. 456 (5th Cir. 2010)("We have previously held that a COA was not required to appeal the denial of a motion to recuse.") (<u>citing to</u> <u>Travino v. Johnson</u>, 168 F.3d 173, 176-78 (5th Cir. 1999); <u>Nelson v. United States</u>, 297 Fed. Appx. 563 (8th Cir. 2008)(A petitioner "need not obtain a certificate of appealability to appeal [his motion to recuse] because it is separate from the merits of a § 2255 motion").

In sum, the recusal matter was never determined on the merits by the district court or reviewed by the appellate court. Judge Herndon clearly erred when concluding that Kapordelis had an unencumbered opportunity to litigate the recusal issue in the Georgia courts.

## D. The Berger/Womack Claim Was Timely Filed But Never Litigated

Once the Eleventh Circuit issued its 18-month delayed order with respect to bifurcation (on April 8, 2014), Kapordelis filed timely motions for reconsideration of that order (during the ongoing appeal in Case No. 12-13456), pursuant to Federal Rules of Appellate Procedure and Local Rules of the Eleventh Circuit. (Apps. K and L). There was no legitimate "bar" to filing these motions in response to the panel's just issued order, and there was no lawful basis for returning the motions "unfiled." (App. M).

Where the <u>Berger</u> and <u>Womack</u> claim was never litigated on the

merits, the Seventh Circuit can do so without contravening an Eleventh
Circuit judgment.  Even in the Eleventh Circuit's order denying the
petition for writ of mandamus, it did not conclude that relief was
unjustified under the circumstances; it obstructed a lawful decision
by faulting Kapordelis for not filing his jurisdictional question when
the COA application was pending (which is what he did through the motion
to bifurcate, a motion delayed through no fault of Kapordelis's).

## E.  No Article III Judge Has Ever Assessed the Affidavit of Bias

No judge, apart from Article I Magistrate Judge Brill, has ever
assessed the sufficiency of Kapordelis's affidavit of bias.  Judge
Pannell refused through his September 28, 2012, order which passed
the buck to the Eleventh Circuit. (App. U).  The Eleventh Circuit
when it declined the bifurcation motion on April 8, 2014. (App. J).
The Eleventh Circuit refused again through its ruling in the Petition
for Writ of Mandamus. (App. O).  And, of course, Judge Herndon declined
when he decided that no habeas corpus litigant can have the protection
that 28 U.S.C. § 144 provides.

## F.  Summary of Section III

The § 2241 Court strains mightily in its two orders to make it
appear as if the recusal matter and Womack/Berger claims were properly
addressed by the district and appellate courts in Georgia.  The truth
is stubborn, and it proves otherwise through the record.

## IV.  Judge Pannell's Obstruction of the Recusal Safeguards Resulted in Violations of 28 U.S.C. §§ 144, 636(b), Fed.R.Civ.P. 72, Rule 4 of § 2255, and Article III of the Constitution

Judge Pannell's refusal to litigate the sufficiency of the affi-
davit of bias, or to assess the objections to Magistrate Brill's order,
violated 28 U.S.C. §§ 144, 636(b), Rule 4 of § 2255, Fed.R.Civ.P. 72,
and Article III.  These violations in turn stripped Judge Pannell's

Court of its adjudicatory capacity to evaluate or dispose of the original claims of constitutional error in Kapordelis's § 2255 motion.

## A. Judge Pannell's Obstruction Violated 28 U.S.C. § 144

Judge Pannell's refusal to litigate the sufficiency of the affidavit alleging bias, in his court, deprived the § 2255 Court of its adjudicatory capacity to either assess Kapordelis's grounds of error or issue a valid, final order in the proceedings. With no valid, final judgment pursuant to § 2255(a), Kapordelis never received a lawful decision on the merits because this requires a competent court with jurisdiction.

"Only Congress may determine a lower court's subject-matter jurisdiction." Kontrick v. Ryan, 540 U.S. 433, 454 (2004). As explained by the Supreme Court in plain terms:

> [T]he judicial power of the United States...is (except in enumerated instances, applicable exclusively to [the Supreme] Court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess sole power of creating tribunals (inferior to the Supreme Court)...and of investing them with jurisdiction either limited, concurrent, or exclusive, **and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.**

Ankenbrandt v. Richards, 504 U.S. 689, 698 (1992)(quoting Cary v. Curtis, 44 U.S. 236, 245 (1845))(emphasis added). The Supreme Court has "long supported the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred. For example: 'We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution.'" New Orleans v. Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358 (1989).

With this backdrop, we turn to Section 144 of Title 28, which provides, in relevant part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that a judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party, **such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding....**

28 U.S.C.A. § 144 (emphasis added).  Where § 144 uses imperative language to terminate the proceedings—"[the accused] judge shall proceed no further therein"—the Eleventh Circuit deems such commands as a stripping of jurisdiction.  Williams v. Warden, 713 F.3d 1332, 1338-39 (11th Cir. 2013)("A plain reading of the phrase 'shall not be entertained' [in the context of § 2255(e)] yields the conclusion that Congress intended to, and did strip the district court of subject-matter jurisdiction....").

So, where Congress gave the district court authority to conduct the § 2255 proceedings under 28 U.S.C. § 2255, it expressly stripped the § 2255 Court of its jurisdiction (that is, adjudicatory capacity) under § 144 "in the exact degree[] and character which to Congress [seemed] proper for the public good." Ankenbrandt (supra).  Thus, with respect to this case, once Kapordelis filed his affidavit of bias, Judge Pannell had no choice but to terminate the proceedings and litigate the question of his disqualification.  His decision to refuse litigation was, according to the Supreme Court,"treason to the Constitution." New Orleans (supra).

In Berger v. United States, 25 U.S. 22 (1921), the Supreme Court interpreted the precursor to § 144, in terms of process, and held:

> It permits an affidavit of personal bias or prejudice to be filed, and upon its filing [] directs an immediate cessation of action by the judge whose bias or prejudice is averred, and, in his stead, the designation of another judge.

Id. at 23 (emphasis added).  Judge Pannell ignored his procedural obligations under § 144 and continued to deliberate the § 2255 issues without legal authority to do so.

In United States v. Womack, 435 F.2d 1337 (5th Cir. 1971)(binding on Eleventh Circuit), the panel adopted the Berger holding and precisely outlined the district judge's duty:

> [T]he filing of an affidavit of personal bias or prejudice of the judge who is to preside at trial, conformably to 28 U.S.C.A. § 144, leaves the judge no duty other than to pass upon the legal sufficiency of the affidavit to show his objectionable inclination or disposition, and, if legally sufficient, compels his retirement from the case without passing upon the truth or falsity of the facts affirmed.

Id., at 1341. Judge Pannell usurped authority to "proceed further" in the case without (1) assessing the affidavit of bias himself (as Womack directs when referring to "the judge"), or (2) assigning an Article III "proxy" judge to complete the task of determining whether the affdiavit is sufficient for disqualification purposes. There was no authority for Judge Pannell to cede his jurisdictional duty under § 144 to the magistrate court. This cession became final, of course, once Judge Pannell refused to assess the objections to the Article I judge's recusal ruling.

As noted in Federal Practice and Procedure, 13 C. Wright, A. Miller and E. Cooper, § 3551 at 375, "it is for the judge who is the object of the affidavit [of bias] to pass upon its sufficiency." Although it is reasonable to allow another district judge to conduct this assessment, it is unlawful to assign the task to an adjunct judge who reports to, and is hired or fired by, the accused.

In sum, Judge Pannell's refusal to assess the affidavit of bias or rule on the objections to the magistrate's order stripped his court of adjudicatory capacity to do anything else under § 2255. Congress no doubt recognized the importance of an impartial tribunal in all proceedings, criminal and civil, and thus drafted recusal safeguards in such a way that they would provide a remedy in cases of personal bias. What it clearly did not anticipate, is Judge Pannell's obstruction.

## B. Judge Pannell's Refusal Violated Rule 4 of Section 2255

Rule 4 of § 2255 does not directly refer to 28 U.S.C. § 144. It does, however, state in the advisory notes that a § 2255 litigant "can file an affidavit of bias in order to disqualify the trial judge...." Notes of Advisory Committee, foll. Rule 4 of § 2255. Importantly, the Advisory Committee specifically refers to some "questioning of the effectiveness" of the disqualification procedures made availabe to § 2255 litigants. Id. Although there is no detail as to the types of defects which might arise, it is reasonable to assume that the committee never imagined that a trial judge would simply ignore the procedure to avoid disqualification.

## C. Judge Pannell's Refusal Violated 28 U.S.C. § 636(b) and Rule 72

The record demonstrates that Magistrate Brill issued a final recusal order under §636(b), one that went unreviewed by the district court even though timely objections had been filed. There is no basis to assume that Judge Pannell's final decision in the § 2255 proceedings can be interpreted as an "implicit" or "implied" decision to overrule the objections. After all, he expressly refused to assess the objections through his September 26, 2012, order. Equally important, the final order in the § 2255 proceedings is rendered void because of the § 144 violation, whether based on the plain reading of the statute or the interpretations in Berger and Womack. To assume that a void order implies anything at all is absurd. Judge Pannell almost assuredly ignored the objections and affidavit because he had no way to profess impartiality after having opined that legal gay sex was worse than child rape. After all, how could he possibly finish this statement in such a review: "I am not personally biased against Kapordelis, even though I increased his prison term substantially based on his legal, private,

homosexual-sexual conduct in Prague, because _____."

The transfer of the recusal decision to Magistrate Brill violates § 636(b) for three reasons.  First, it contravenes the very first proviso of the statute—"notwithstanding any provision of law to the contrary"—because both § 144 and Rule 4 of § 2255 place the recusal decision in the hands of the trial judge (or accused judge), not an adjunct who would find it hard (if not impossible) to remain objective.  Second, it conflicts with the custom in the Eleventh Circuit which requires recusal decisions initially litigated by the magistrate court to be finalized by the district court's de novo review.  See Iacullo v. United States (supra), and Brown v. United States, 2012 U.S. Dist. LEXIS 99645 (N.D. Ga, 2012)(district judge reviewed the magistrate's R & R regarding the district judge's recusal under § 144, and adopted it pursuant to § 636(b)(1)(B, C)).  Third, one federal court has explained the issue this way:

> Although a motion to recuse is a pre-trial matter not specifically denominated as dispositive by statute, the Magistrate Judge appropriately deal[s] with it on a report and recommendation basis **because motions to recuse are directed in the first instance to the judge sought to be recused.**

United States v. Brunsman, 2014 U.S. Dist. LEXIS 10259 (S.D. OH).

In terms of Fed.R.Civ.P. 72, Judge Pannell's refusal to assess the objections violates Rule 72(a)(addressing non-dispositive matters) and Rule 72(b)(addressing dispositive matters).  Rule 72(a) states that the "district judge **must consider** timely objections..."  Rule 72(b) states that the "district judge **must determine de novo** any part of the magistrate judge's disposition that has been properly objected to...."  The term "must" is unambiguous, yet Judge Pannell expressly refused.

In sum, Judge Pannell's transfer of final recusal authority to the magistrate judge violated 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72.

**D. Judge Pannell's Refusal Violated Article III of the Constitution**

Magistrate judges invade the authority of Article III judges and violate the constitutional separation of powers when they are allowed to solely determine whether a district judge must step aside in a case or controversy.  This invasion is especially egregious if the movant in a § 2255 proceeding files objections which the district judge absolutely refuses to litigate.  Unlike Article III judges—who are nominated by the President, confirmed by the Senate, and enjoy life tenure—federal magistrate judges are appointed by a majority of the judges on the district court for a term of eight years.  28 U.S.C. §§ 636(a), (e).  Magistrate judges, like bankruptcy court judges, are Article I judges who are authorized by Congress to assist federal district courts in an ancillary capacity.  See Brown v. United States, 748 F.3d 1045, 1053 (11th Cir. 2014).

While magistrate judges may support the district court judges by performing a wide range of duties, only Article III judges may exercise the "judicial power of the United States."  U.S. Const., art III, § 1.  This power "can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto."  Stern v. Marshall, 131 S. Ct. 2594, 2608 (2011)(quoting United States v. Nixon, 418 U.S. 683, 704 (1974)(internal quotation marks omitted)).  The core constitutional principle of separation of powers protects the independence of the judicial branch, and Article III "imposes some basic limitations that the other branches may not transgress."  Id. at 2608-09.  Magistrate judges, authorized by Congress' Article I power, violate the separation of powers when they perform tasks that implicate the "judicial power of the United States," reserved for Article III judges.  Brown, 748 F.3d at 1058.

It would turn the separation of powers on its head to allow an Article I judge to have final decision-making authority on the question of whether an Article III judge is personally biased, and whether that judge must "immediately retire" from the proceedings, as 28 U.S.C. § 144 requires.  The Eleventh Circuit in Brown, addressing whether a magistrate judge can enter a final judgment in a § 2255 proceeding, noted that a magistrate judge's final decisionmaking authority in a § 2255 proceeding "implicates unique Article III problems...[where it] create[s] an 'ironic situation whereby non-Article III magistrate judges review and consider the propriety of rulings by Article III district judges, but do not themselves have to worry about review,' by the district court." Brown, 748 F.3d at 1070 (quoting United States v. Johnson, 258 F.3d 361, 373 (5th Cir. 2001)).  It would be far more than "ironic" if an Article I judge could force an Article III judge to step aside in a case; it would be patently absurd.  Adapting the language in Brown to Kapordelis's eerily similar circumstances, "Congress could have reasonably concluded that it could not expect magistrate judges to exercise independence when reviewing, [pursuant to § 144 during § 2255 proceedings], the actions of those who would reappoint them to their positions." Brown, 748 F.3d at 1067.

Clearly, the magistrate judge in Kapordelis's § 2255 proceedings exceeded her authority when issuing a final, unreviewed order in the recusal matter.  As such, the magistrate court usurped district court authority, and violated Article III.  Article III judges cannot delegate to magistrate judges final authority over some important issue in a case.  Only Article III judges, not their adjuncts, have the power to compel an Article III judge's retirement due to personal bias.  Simply, it is inconceivable that Article III can be read to permit a magistrate judge to enter a final judgment under § 144 without district

court review of legitimate objections. As explained by the Brown

Panel, the constitutional harm emerges in such a scenario because:

> The magistrate court would be subject to appellate review
> by the circuit court, bypassing the district court entirely.
> And even then, the court of appeals might never review the
> magistrate judge's determination if the court of appeals
> does not grant movant permission to appeal.

Brown, 748 F.3d at 1069. Importantly, this is precisely the trans-

gression that happened in this case: Judge Pannell refused to get

involved in the recusal decision in any way, and his refusal to ripen

the magistrate court's order led the appellate court to decline any

appellate review, as well. Indeed, here, the affront to procedural

integrity was even worse, because no COA was needed to earn an appeal

in a properly litigated recusal motion.

The Supreme Court has emphasized the distinction between allowing

a magistrate judge to issue a report and recommendation on a matter

(leaving the final resolution to a district court judge), and making

a final ruling. In United States v. Raddatz, 447 U.S. 667, 686 (1981)

(Blackmun, J., concurring), Justice Blackmun stressed that there is

"no threat to judicial power or the independence of judicial decision-

making" where Article III judges "retain supervisory control" over

magistrate judges' actions. The Raddatz Court held that a magistrate

judge could issue a report and recommendation on a motion to suppress

incriminating statements because the recommendation was subject to a

de novo determination by the district court judge. Id. at 683 (majority

opinion). In this case, a district court never made any determination,

de novo or otherwise, and Judge Pannell failed to successfully transfer

his supervisory duties (oversight of the objections and the ultimate

assessment of the affidavit) to the appellate court. This left the

recusal decision as "a threat to judicial power" in the worst way.

In assessing whether a power may be entrusted to non-Article III judges, courts look at several factors, including (1) "the extent to which the essential attributes of judicial power are reserved to Article III courts," (2) "the extent to which the non-Article III forum exercises the range of jurisdiction and powers normally vested only in Article III courts," (3) "the origins and importance of the right to be adjudicated," and (4) "the concerns that drove Congress to depart from the requirements of Article III." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 851 (1986)(internal citations and quotation marks omitted). Here, the Schor factors indicate that a magistrate judge's determination of a recusal decision involving an Article III judge violates Article III.

First, the "essential attributes of judicial power" are not reserved to Article III courts when magistrate judges have the final say on whether an Article III judge will be allowed to exercise his judicial power. To be blunt, such a scenario does not merely give "the impression that magistrate judges are not adjuncts, but are independant of Article III control," United States v. Johnson, 258 F.3d 361, 370 (5th Cir. 2001); it compels the conclusion that magistrate judges control Article III power at its core.

Second, magistrate judges exercise "the range of jurisdiction and powers normally vested only in Article III courts" when they litigate § 144 and Rule 4 recusal affidavits through a final and binding judgment. See Schor, 478 U.S. at 851; Stern, 131 S. Ct. at 2615 (stressing that a court's "entry of a final, binding judgment" is the "most prototypical exercise of judicial power"). There is a a good reason why Congress insisted through the Federal Magistrates Act that decisions reached by magistrate judges be reviewed by the district court in the wake of objections, whether under a de novo standard (§ 636(b)(1)(B)), or a

contrary to law standard (Fed.R.Civ.P. 72(a)). Judge Pannell had no authority to abandon his supervisory jurisdiction over the magistrate court. This abandonment occurred because the Eleventh Circuit declined to conduct both a "supervisory" and "appellate" review of the recusal decision.

Looking at the third Schor factor, the "origin and importance of the right to be adjudicated," is fundamental. The due process clause "requires that a defendant receive a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997)(citations omitted); see also, In re Murchison, 349 U.S. 133, 136 (1955)("A fair trial in a fair tribunal before a judge with no actual bias is a basic requirement of due process. Fairness of course requires an absence of bias in the trial of cases."). As explained in Harrison v. McBride, 428 F.3d 652, 668 (7th Cir. 2005), "The general principles concerning a defendant's due process right to an impartial judge are clear in the jurisprudence of the Supreme Court." (Citing to In re Murchison). Where § 2255 proceedings are extensions of the criminal case, and are tasked to determine if the criminal con-viction and sentence were sound or hollow undertakings, leaving the question of a district judge's impartiality to a magistrate judge vio-lates due process rights, and perhaps the Suspension Clause.

Fourth, Congress never sanctioned the district court's transfer of recusal jurisdiction to magistrate courts—not under § 144, and not under Rule 4 of § 2255—as a "depart[ure] from the requirements of Article III." See Schor, 478 U.S. at 851. Magistrate judges have the authority to provide an initial assessment of an affidavit of bias, but they must do so by way of a report and recommendation to avoid Article III conflicts.

60

In sum, the Schor factors indicate that the magistrate court's issuance of a final, unreviewed order in this § 144 matter violates Article III, in that it is a constitutional infringement on the judicial authority of Article III judges. When one considers both the Schor analysis and longstanding Article III jurisprudence, there is no doubt that Magistrate Brill violated the Constitution when she usurped the district court's final authority on recusal.

### E. Summary of Section IV

The question of Judge Pannell's personal bias aside (for a moment), his refusal to assess the objections and the sufficiency of the affidavit violates 28 U.S.C. §§ 144 and 636(b), Rule 4 of § 2255, Fed.R. Civ.P. 72(b), and Article III. The fatal, structural defect resulting from these violations is unambiguously set forth in § 144 as interpreted by the Supreme Court (Berger) and Eleventh Circuit Court of Appeals (Womack): The §2255 Court was stripped of its subject-matter jurisdiction and had no authority to assess or dispose of any grounds of error. The fact of Judge Pannell's personal bias provides an additional basis for relief.

### V. Where Kapordelis's Initial § 2255 Claims Were Never Litigated in a Court of Competent Jurisdiction, Savings Clause Relief is Warranted

Sections 2241 and 2255 "provide federal prisoners with distinct forms of collateral relief. Section 2255 applies to challenges to the validity of convictions and sentences, where [Section] 2241 applies to challenges to the fact or duration of confinement." Hill v. Werlinger, 695 F.3d 644, 645 (7th Cir. 2012).

In his petition, Kapordelis presented the § 2241 Court with seven grounds of constitutional error challenging his conviction and sentence. (Doc. 1, pp. 25-99). Each of these grounds was initially presented, as the law requires, to the § 2255 Court in the Northern District of

Georgia.  The dispositive point, however, is that no lawful assessment of the seven claims ever occurred because the § 2255 Court was stripped of its authority to "proceed further" unless and until it resolved the issue of disqualification—which it refused to do.  The question begged: Where does Kapordelis go to preserve his constitutional right to habeas corpus proceedings in an impartial venue—whether that right is couched in the Due Process Clause of the Fifth Amendment or the Suspension Clause in Article I?  There has to be a remedy.

The "savings clause" in § 2255(e) provides the answer, where it invites prisoners to challenge a conviction and sentence by filing a § 2241 petition—in the jurisdiction of confinement—under limited circumstances.  These circumstances are present when a petitioner can show that a remedy under § 2255 "is inadequate or ineffective to test the legality of [the prisoner's] detention." Hill, 695 F.3d at 648. And, as explained in the section on jurisdiction (supra, pp. 3-7), this remedy is not subject to the "extraordinary" hurdles which were established in cases where a litigant was seeking a second round of collateral review after the first round of review had been lawfully executed.  Thus, there is no need for "new law" or "new evidence," and no legitimate reason to require a more powerful claim than that which was presented (but never lawfully adjudicated) in Kapordelis's original § 2255 proceeding.

In short, Kapordelis alleges a structural defect in his initial § 2255 proceedings which left his seven grounds of constitutional error unresolved, where Judge Pannell's personal bias and refusal to litigate the § 144 affidavit/motion left the § 2255 Court without adjudicatory capacity.

There are multiple arguments which demonstrate why Kapordelis has earned savings clause access to a § 2241 review, each addressed in turn.

A. **What a Legitimate Savings Clause Analysis Looks Like Under the Unique Circumstances Presented in Kapordelis's Case**

Although <u>Davenport</u>, <u>Garza</u>, <u>Taylor</u>, <u>Brown</u> and <u>Webster</u> all involve second or successive collateral reviews where the initial review was lawfully executed, and are thus not directly on-point under Kapordelis's circumstances (they are nearly inapposite), the underlying rationales used in these cases to apply the savings clause are instructive. If one exports from these cases the relevant issues, the following "test" appears appropriate in this case.

1. **A Textual Analysis of § 2255(a) and § 2255(e) Supports Relief**

In Webster, the panel explains the importance of conducting a textual analysis of both § 2255(a) and § 2255(e) to determine whether savings clause relief is justified. <u>Webster</u>, 784 F.3d at 1138-39. Such an analysis supports relief based on Kapordelis's facts.

Under § 2255(a), remedy by motion is available to "[a] prisoner in custody of a court established by Act of Congress claiming the right to be released upon the ground that **the sentence was imposed in violation of the Constitution or laws of the United States....**" 28 U.S.C. § 2255(a) (emphasis added). Kapordelis's seven claims of constitutional error qualify for collateral review, where he alleges violations of the Fourth, Fifth, and Sixth Amendments. Since this is not a case where a second collateral review is requested, there is no need to present "extraordinary" claims (such as actual innocence) as required in <u>Davenport</u> and its progeny.

Under § 2255(e), review by way of § 2241 is available when "the remedy by [§ 2255] motion **is inadequate or ineffective <u>to</u> <u>test</u> the legality of [the prisoner's] detention.**" 28 U.S.C. § 2255(e)(emphasis added). As explained in <u>Webster</u>, "the statute focuses on the detention as a whole, not the underlying offense." <u>Webster</u>, 784 F.3d at 1138).

Where Judge Pannell refused to litigate the fact of his personal bias during the § 2255 proceedings, logic alone dictates that an adequate or effective test could never transpire where authority to conduct the test has been revoked. See Franklin v. McCaughtry, 398 F.3d 955, 961 (7th Cir. 2004)("Where there is structural error, such as judicial bias, harmless-error analysis is irrelevant."); United States v. Roy, 761 F.3d 1285 (11th Cir. 2014)("Structural error is not subject to harmless-error review."); Arizona v. Fulminante, 499 U.S. 279, 309 (1991)("These are structural defects in the trial mechanism, which defy analysis by 'harmless-error' standards.").

Congress codified the savings clause in 1948, when it enacted § 2255 to change the venue of postconviction proceedings brought by federal prisoners. Davenport, 174 F.3d at 609. Where 28 U.S.C. § 144 was enacted decades earlier, and where § 144 explicitly set forth application in "all proceedings in a district court," Congress naturally could have created the savings clause to ensure, among other things, that a remedy existed should any judge interpret § 2255 to be devoid of recusal safeguards that are meaningful. Judge Pannell made § 2255 inadequate or ineffective as to Kapordelis, and Judge Herndon seeks to make it so for all habeas corpus litigants. Seventh Circuit intervention is necessary.

In sum, Kapordelis's unique circumstances justify savings clause relief based on principles of statutory interpretation. Although the Seventh Circuit has only reviewed the savings clause in cases which involve a lawfully completed first round of collateral review, this does not mean it should avoid reviewing a case where there was a structural defect in the initial proceeding. Instead, there must be an application of the savings clause to the unique facts in this case. Such a review should, of course, be a plenary one on the merits. A summary disposition would not do justice to the claims alleged in this case, or habeas corpus.

64

2. The "Essential Function" or "Core Purpose" Analysis Supports
   Relief Based on Kapordelis's Unique Facts

To determine whether savings clause relief was due in a second
or sucessive petition, the Davenport panel did what it should have: it
applied the savings clause to the facts in the two cases presented.
In this effort, the panel had "to decide what 'adequacy' means...." in
the context of § 2255(e). Davenport, 147 F.3d at 609. This in turn
required the panel to determine the "essential function of habeas
corpus," and to ascertain whether "it is impaired in the circumstances
before us by the limitations" set forth at § 2255(h). Id. Ultimately,
the panel concluded that "[t]he essential function is to give a priso-
ner a reasonable opportunity to obtain a reliable judicial determination
of the fundamental legality of his conviction or sentence." Id. (emphasis
added). Although Kapordelis rightfully escapes the "extraordinary"
hurdles demanded for second or successive petitioners, his circumstances
justify relief based on this "essential function" rationale. To be
clear, he was denied a "reliable judicial determination" with respect
to his initial claims of error because nothing reliable could emerge
from a personally biased judge who obstructed recusal safeguards.

Turning to Webster, the en banc panel made the following comment
after conducting its textual analysis:

> If one were to disagree with our view, stated earlier, that
> ordinary principles of statutory interpretation lead directly
> to the result that the savings clause applies [], then the next
> step would be to take into account the fact that a core purpose
> of habeas corpus [would be undermined if a § 2241 review does
> not take place].

Webster, 784 F.3d at 1189. In that case, the core purpose was defined
as "to prevent a custodian from inflicting an unconstitutional sentence."
Id. But, here, there is much more at stake.

If Kapordelis is not allowed to proceed to a § 2241 review through
the grace of the savings clause, the structural defect caused by Judge

65

Pannell's obstruction leaves seven critical claims of constitutional error unresolved. This violates the one imperative that the Supreme Court issued with respect to the savings clause:

> [The Supreme Court] treated the language found in § 2255(e) as a safety valve: if some application of § 2255 would conflict with the Suspension Clause, a district court could proceed under § 2241 without any need to hold § 2255 unconstitutional.

Webster, 784 F.3d at 1152 (dissenting opinion). Specifically, if Judge Pannell and Judge Herndon are correct, and § 2255 can be read so as to allow proceedings to be conducted without fealty to recusal laws, then Kapordelis's access to habeas corpus (a right presumably protected by the Suspensory Clause) has been compromised—at least to the extent that habeas corpus requires adjudication by an impartial judge.

Finally, if one were tasked to identify the "essential" or "core" function of habeas corpus that would be thwarted if Kapordelis's circumstances did not earn a § 2241 review, it would be this: A prisoner has a constitutional right—whether couched in the Due Process Clause or the Suspension Clause—to obtain one round of collateral review in a court which affirmatively establishes its impartiality in the face of a timely filed affidavit alleging personal bias under § 144's strict requirements. Alternatively, because Kapordelis presented sufficient evidence of personal bias, the core or essential function can be identified as this: A prisoner has the constitutional right to an impartial tribunal when he seeks collateral review, no matter the venue.

In sum, Kapordelis complains of obstructed § 2255 proceedings which left the legality of his conviction and sentence untested. This has nothing to do with an "erroneous outcome" because no lawful outcome emerged. Again, as the Taylor Panel held, "[Section 2255(e)] poses the question whether the remedy is adequate to test the legality of the detention. This implies a focus on procedures, rather than outcome."

66

_Taylor_, 314 F.3d at 835. The underlying rationales used in _Davenport_,
_Webster_, and _Taylor_ support relief under Kapordelis's unique circum-
stances, as long as one recognizes that he does not need to argue
new law, new evidence, "extraordinary" claims, or confront any higher
hurdle that would befit a second of successive petitioner.

**B. Relief is Justified Based On Rationales Used By Various Courts
To Deny Savings Clause Relief When Bias Alone Was Alleged**

As mentioned _supra_ (Section II(1)(d), p. 31), this is the first
case where there exists an allegation of personal bias against the
trial judge _and_ obstructed recusal process as set forth in § 144.
Where these other cases relied upon the unobstructed availability of
§ 144 and Rule 4 of § 2255 to remedy purported bias, Kapordelis can
justify relief based on the rationale used in these cases because he
was denied the stutory remedies that these other litigants could access.

**C. The Savings Clause Rationales Used By Three Other Circuit Courts
Of Appeal Justify Relief in This Case**

The savings clause rationales used by the Third, Tenth, and Second
Courts of Appeal support relief under Kapordelis's unique circumstances.

Consider first the standard used by the Third Circuit in _Cradle
v. Miner_, 290 F.3d 536 (3rd Cir. 2002):

> [Savings clause access to § 2241 is permitted] only where the
> petitioner demonstrates that some limitation **of scope or proce-
> dure** would prevent a § 2255 proceeding from affording him a
> full hearing and adjudication of his...claims.

_Id._, at 538. Kapordelis was deprived of a "full hearing and adjudi-
cation " because his § 2255 court was stripped of its authority to
do both. Thus, under the Third Circuit's standard, any § 2255 court
plagued by personal bias on the part of the judge _and_ obstructed recusal
procedures would qualify for savings clause relief.

Consider next the Tenth Circuit's standard, which, as explained in

Section II(A)(2)(a), p. 36 (<u>supra</u>), holds that § 2255(e) relief is proper where the opportunity for § 2255 is "genuinely absent." <u>Prost v. Anderson</u>, 636 F.3d 578 (10th Cir. 2011)(citing to <u>Spaulding v. Taylor</u> and <u>Ackerman v. Novak</u>). Kapordelis's § 2255 Court became "genuinely absent" the moment Judge Pannell refused to litigate the issue of his personal bias, and provoked the revocation of his jurisdiction.

Finally, the standard used by the Second Circuit is instructive, where, in <u>Triestman v. United States</u>, the Court held that, in order to obtain savings clause access to a § 2241 review, a prisoner must show both "(1) that § 2255 is not available, and (2) the failure to allow some form of collateral review would raise constitutional questions." <u>Triestman</u>, 124 F.3d 361, 377 (2d Cir. 1997). Indeed, Kapordelis was denied access to a § 2255 court with competent jurisdiction through an impartial judge. This failure resulted in a denial of due process and a violation of the Suspension Clause (Article I, § 9, cl.2) to the extent that the § 2241 Court shuts its door to review.

## D. Additional Seventh Circuit Support for Relief Based On Kapordelis's Unique Facts.

In <u>Potts v. United States</u>, 210 F.3d 770 (7th Cir. 2000), this Court explained that "AEDPA makes it vital to determine whether a previous petition (or motion) was 'the real thing' that ought to subject the petitioner (or movant) to those limitations." The Court added that, "the essential point is that **a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits.**" <u>Id</u>., at 770. Kapordelis properly seeks that opportunity, but he needs a court with competent, impartial jurisdiction to conduct the proceedings.

In <u>O'Connor v. United States</u>, this Court held that "it is essential to know what happened in the initial petition in the district court," before denying a review on the merits of a claim. <u>Id</u>., 133 F.3d 548, 550

(7th Cir. 1998). Kapordelis has provided painstaking detail of what happened, to dispel any notion that the courts in Georgia conducted any litigation of the recusal matter at the district or appellate level. In addition, the record establishes that no court has yet to determine the merits of the Berger and Womack claims with respcect to § 144.

In Webster, the en banc panel noted that Davenport and the decisions which followed all hold that "there must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." Webster, 784 F.3d at 1137. Although those cases dealt with second or successive petitions and thus needed either new evidence or new law to justify a second round of review, Kapordelis's "something more" rests in the fact that the § 2255 Court was unable to issue a final order in the proceedings. This structural defect is sufficient to provoke a "first bite" at the collateral review, albeit in a § 2241 venue.

Also instructive, consider the comment made in the Webster dissent, where five Seventh Circuit judges found there was "no basis for another round of collateral review when the substantive rule is unchanged." Id., at 1151. The question which followed, asked: "How can § 2255 be 'inadequate or ineffective' to present a line of argument that [was] actually presented, and on which he received a decision on the merits?" Id. Here, there is no such question, because there never was a decision on the merits to begin with, where the § 2255 Court was powerless to issue it.

### E. Summary of Section V

Petitioner Kapordelis has earned savings clause relief. This is true whether one considers a statutory analysis of § 2255(a) and

69

§ 2255(e); the "essential" or "core" function of habeas corpus; the overwhelming case law addressing § 2255 motions where personal bias is alleged without obstructed proceedings; or, the general standards of savings clause relief used by the Second, Third, Tenth, and Seventh Circuit Courts of Appeal.  The lynchpin of Kapordelis's argument is that a court stripped of its subject-matter jurisdiction due to personal bias and obstructed recusal procedures can never be deemed adequate or effective to test anything, much less the legality of a prisoner's conviction and sentence.

### VI. SUMMARY AFFIRMANCE IS NOT PROPER IN THIS CASE

In the words of Justice Holmes:

> "Habeas corpus is a collateral proceeding that exists to cut
> through all forms and go to the very issue of the structure.
> It comes in from the outside, not in subordination to the
> proceedings, and although every form may have been preserved,
> opens the inquiry whether they have been more than an empty
> shell."

Boumedience v. Bush, 553 U.S. 723, 785 (2008).  When a personally biased trial judge substantially increases an American citizen's prison term based on lawful, private, homosexual-sexual conduct, and then refuses to litigate the question of his own personal bias during § 2255 proceedings, any decision reached by his court is inherently unreliable and legally void.  The integrity of habeas corpus proceedings is crucial.

The savings clause is a perfect remedy to restore credibility to habeas corpus under such circumstances.  In fact, this is the quintessential scenario for this relief.  After all, how could a § 2255 court stripped of its adjudicatory capacity adequately or effectively test anything, let alone the legality of a prisoner's conviction or sentence.  More is required for a suitable alternative to habeas corpus.  Petitioner Kapordelis seeks what is due: "an unencumbered opportunity to receive a decision on the merits" by an impartial judge.

"Summary affirmance is an exception to the normal consideration of a matter on appeal. It should be employed only where the propriety of such action is clear and where the position of a party is so clearly correct as a matter of law that no substantial question regarding the ouctome on appeal exists." Williams v. Chrans, 42 F.3d 1137, 1139 (7th Cir. 1994)(internal quotations and citations omitted). This case is not a proper one for summary affirmance of a summary dismissal. The issues are clearly debatable and incredibly important.

Congress has tasked this Court with the jurisdiction, under the savings clause, to ensure that a prisoner's right to habeas corpus is not compromised. Leaving § 2255 proceedings in the hands of a personally biased judge does not merely compromise habeas corpus, it renders it the "empty shell" that Justice Holmes was referring to with respect to criminal proceedings. Unless this Court is willing to condone the § 2255 Court's obstruction of § 144 safeguards as to Kapordelis, or the § 2241 Court's evisceration of § 144 from habeas corpus, a plenary review with full briefing should be ordered without hesitation. Although this case involves matters of first impression, the impression must be made.

In addition to addressing the gravitas of § 144, this Court should make it clear that Davenport and its progeny did not limit the savings clause to second or successive cases exclusively, even though § 2255(e) cases or controversies brought to bear thus far only addressed second or successive petitions. To read § 2255(e) in a way that immunizes all structurally defective initial proceedings is anathema to Congress's intent and, channeling New Orleans, 491 U.S. at 358, "treason to the Constitution." Justice will only be served if this Court conducts a legitimate savings clause analysis based on Kapordelis's unique facts. Only through such an analysis—which is far more involved than a summary affirmance—does it become obvious why § 2255(e) relief is necessary.

71

## CONCLUSION

Wherefore, Kapordelis urges this Honorable Court, for the reasons stated above, to conduct a plenary review of this appeal following full briefing.

Respectfully submitted, this 29th day of October, 2015,

Gregory C. Kapordelis, Pro Se
Fed. I.D. #63122-053
U.S. Penitentiary-Marion
P.O. Box 1000
Marion, Illinois 62959

**Note:** Because this information is presented in a memorandum, as opposed to an Appellant Brief, there is no certification of compliance with respect to Rules 32 or 30(d). However, a "Required Short Appendix" and Appendix are provided to help the Court reach a just outcome.

## REQUIRED SHORT APPENDIX

### Table of Contents

Document                                                        Page

S.A. #1: District Court's Order Dismissing Petition..........1

S.A. #2: District Court's Order Denying Rule 59(e) Relief...13

S.A. #3: Notice of Appeal and Docketing Statement..........23

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREGORY C. KAPORDELIS,
# 63122-053,

Petitioner,

vs.                                        Case No. 14-cv-1005-DRH

JEFFREY S. WALTON,

Respondent.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Petitioner Gregory Kapordelis is currently incarcerated in the Federal Correctional Institution at Marion, Illinois, which is located in the Southern District of Illinois. He is serving a thirty-five year sentence for child pornography-related crimes. *See United States v. Kapordelis*, No. 04-cr-249 (N.D. Ga. 2004) (Doc. 499) ("criminal case"). Kapordelis filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge his conviction and sentence (Doc. 1). The 226-page petition hinges on a single argument.

Kapordelis claims that the United States District Court for the Northern District of Georgia lost jurisdiction to entertain his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, when it failed to rule on a motion to recuse the judges in that proceeding (Doc. 1, p. 4). This oversight, in turn, rendered the § 2255 proceeding defective and the order denying his motion void. Kapordelis seeks a do-over, and he maintains that the "savings clause" under §

S.A. 1

2255(e) entitles him to one.  He asks this Court to consider, anew, seven of the twenty-three grounds for relief that were identified in his § 2255 proceeding.

Although this appears to be the first time that Kapordelis has filed a § 2241 petition in this District, his argument is not a novel one.  It has become the subject of a filing ban in the United States District Court for the Northern District of Georgia and the United States Court of Appeals for the Eleventh Circuit.  *See, e.g., Kapordelis v. United States*, No. 12-13456 (11th Cir. June 29, 2012); *see also In re: Gregory C. Kapordelis*, No. 14-12275 (11th Cir. May 22, 2014).  In addition, litigation over this issue has spurred Kapordelis' claims of judicial bias against numerous judges who have disagreed with his position, including a magistrate judge, a district judge, and two panels of federal appellate court judges.  *See. e.g.. United States v. Kapordelis*, No. 04-cr-249 (N.D. Ga. 2004) (Docs. 538, 546); *Kapordelis v. Carnes, et al.*, No. 11-cv-1769 (N.D. Ga. 2011); *Kapordelis v. Carnes, et al.*, No. 12-10956 (11th Cir. 2012).  As discussed in more detail below, this Court finds Kapordelis' argument unavailing under § 2241, and the petition shall be **DISMISSED**.

### Background

Kapordelis is a former anesthesiologist and a lieutenant commander in the United States Navy (Doc. 1, p. 7).  On April 12, 2004, he was arrested on allegations of molestation of three juveniles in Russia.  He was indicted on May 4, 2004, on one count of traveling in foreign commerce with the intent to engage in illicit sexual conduct abroad, in violation of 18 U.S.C. § 2423(b), and one count of

S.A.  2

engaging in illicit sexual conduct abroad, in violation of 18 U.S.C. § 2423(c). *See United States v. Kapordelis*, No. 04-cr-249 (N.D. Ga. 2004) ("criminal case") (Doc. 14, criminal case). These charges were eventually dropped.

At the time of his arrest, however, officials seized Kapordelis' home computers and discovered contraband that led to his indictment, under a Fourth Superseding Indictment, and trial on seven counts related to child pornography (Doc. 318, criminal case). A jury returned a guilty verdict on six of these counts on May 24, 2007 (Doc. 457, criminal case). This included three counts of violating 18 U.S.C. § 2251(a) for sexual exploitation of a minor ("Counts 1, 2, and 3"), two counts of 18 U.S.C. § 2252A(a)(2)(A) for receipt of child pornography ("Counts 5 and 6"), and one count of 18 U.S.C. § 2252(a)(5)(B) for possession of child pornography ("Count 7"). *Id.* (Doc. 457, criminal case). On September 19, 2007, Kapordelis was sentenced to a term of thirty-five years of imprisonment[1] and six years of supervised release; he received a $20,000.00 fine (Doc. 499, pp. 4-5, criminal case).

Kapordelis appealed his conviction and sentence in the United States Court of Appeals for the Eleventh Circuit. *United States v. Kapordelis*, No. 07-14499 (11th Cir. 2007). On appeal, he argued that the district court erred by: (1) denying his motion to dismiss Counts 1 and 3 of the Fourth Superseding Indictment; (2) denying his request for a hearing under *Franks v. Delware*, 438

---

[1] This includes a term of imprisonment of 240 months each for Counts 1-3, to run concurrent with each other; 180 months each for Counts 5-6, to run concurrent with each other and consecutive to the sentences for Counts 1-3; and 120 months for Count 7, to run concurrent with the sentences for Counts 5-6 (Doc. 499, p. 2, criminal case).

S.A. 3

U.S. 154 (1978), and his motion to suppress evidence under certain search warrants; (3) admitting testimony concerning his solicitation of sex from boys under the age of eighteen while in the Czech Republic under Federal Rule of Evidence 404(b); (4) applying the 2003 United States Sentencing Guidelines ("U.S.S.G.") instead of the 2002 Guidelines in imposing his sentence; (5) finding that one his victims was vulnerable under U.S.S.G. § 3A1.1; (6) double counting the number of images of child pornography that he possessed by imposing both a two-level enhancement for the number of images he possessed under U.S.S.G. § 2G2.4(b)(2) and a 5-level enhancement for having more than 600 images pursuant to U.S.S.G. § 2G2.4(b)(5)(D); (7) impermissibly granting an upward departure; (8) accepting a written victim impact statement during sentencing; and (9) imposing an unreasonable sentence. In a comprehensive opinion, the Eleventh Circuit addressed each of these claims in detail and ultimately affirmed the district court's decision regarding Kapordelis' conviction and sentence. *See United States v. Kapordelis*, 569 F.3d 1291, 1298 (11th Cir. 2009), *cert. denied*, January 25, 2010.

Kapordelis filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on January 26, 2011 (Doc. 536, criminal case). On the same date, he filed a motion seeking recusal of District Judge Charles A. Pannell and Magistrate Judge Gerrilyn G. Brill from the § 2255 proceeding under 28 U.S.C. §§ 144 and 455 (Docs. 538, 546,[2] criminal case). Before the § 2255 motion was

---

[2] Kapordelis filed a second motion to recuse (Doc. 546) on June 28, 2011, and the first one was deemed to be withdrawn.

S.A.  4

decided, Magistrate Judge Brill denied the motion for recusal in a written order that was entered on September 20, 2011, after concluding that Kapordelis' claim of judicial bias arising from allegations of homophobia was unsupported (Doc. 557, criminal case). Kapordelis filed objections to this order, in the form of an "appeal" to District Judge Pannell on October 3, 2011 (Doc. 560, criminal case), and again on October 13, 2011 (Doc. 562, criminal case). In the instant § 2241 petition, Kapordelis claims that these objections were never addressed.

On December 12, 2011, Magistrate Judge Brill issued a report and recommendation to deny the § 2255 motion (Doc. 567, criminal case). District Judge Pannell adopted the report and recommendation three months later on March 6, 2012 (Doc. 574, criminal case). The district court declined to issue a certificate of appealability (Doc. 577, criminal case).

Kapordelis filed a notice of appeal on June 25, 2012 (Doc. 579, criminal case). *See Kapordelis v. United States*, No. 12-13456 (11th Cir. 2012). Among other things, he challenged the order denying relief under § 2255 and the general denial of his motion for recusal under §§ 144 and 455 (Doc. 579, criminal case). The district court denied Kapordelis' request for leave to proceed *in forma pauperis* ("IFP") on appeal as moot, based on its earlier decision to deny a COA (Doc. 585, criminal case). The Eleventh Circuit also declined to issue a COA on January 23, 2013 (Doc. 596, criminal case) and later denied Kapordelis' motions for reconsideration of this decision (597, criminal case). His request for certiorari review by the United States Supreme Court was denied on October 6,

S.A. 5

2014 (Doc. 623, criminal case). Kapordelis filed countless motions to reconsider

each denial of his request for review of the recusal matter (Docs. 599, 606, 610,

614, 616, criminal case).

## The Habeas Petition

In the instant petition, Kapordelis seeks to upset his federal conviction and

sentence by challenging the district court's handling of his motion for recusal in

the § 2255 proceeding (Doc. 1). He claims that District Judge Pannell's failure to

address the recusal motion deprived the district court of jurisdiction in the §

2255 proceeding. Without jurisdiction, his argument goes, the order denying his

§ 2255 motion is void.

Kapordelis asks for what he refers to as a "first bite" at a collateral attack

on his conviction and sentence. Of the twenty-three grounds originally raised in

support of his request for relief under § 2255, Kapordelis now focuses on seven of

those grounds (i.e., Grounds 5, 7, 9, 11, 15-16, and 20 in the § 2255 proceeding)

(Doc. 1, pp. 2, 25-101). He argues that: (1) the search warrant issued in

connection with his criminal case was not supported by probable cause (Doc. 1,

pp. 29-40); (2) the jury was prejudiced by a false age-of-consent jury instruction

(Doc. 1, pp. 40-59); (3) Kapordelis' sentence was based on private, legal

homosexual intercourse in the Czech Republic (Doc. 1, pp. 60-68); (4) the use of

testimony from Deno Contos[3] violated Kapordelis' rights under the Fifth and Sixth

---

[3] Deno Contos is Kapordelis' second cousin and testified that Kapordelis drugged, molested, and videotaped him while he was unconscious at the age of sixteen. *See United States v. Kapordelis*, 569 F.3d 1291, 1302-03 (11th Cir. 2009). Contos later discovered the videotapes and kept them a secret, until Kapordelis contacted him in a panic after his arrest approximately twenty years later and specifically

S.A. 6

Amendments (Doc. 1, pp. 68-78); (5) Kapordelis' conviction resulted from prosecutorial misconduct in violation of his Fifth and Sixth Amendment rights (Doc. 1, pp. 78-83); (6) the conviction as to Count 7 for possession of child pornography and Counts 5 and 6 for receipt of child pornography violated the Fifth Amendment Double Jeopardy Clause (Doc. 1, pp. 84-88); and (7) Kapordelis' conviction and sentence resulted from the ineffective assistance of counsel on appeal in violation of the Sixth Amendment (Doc. 1, pp. 89-101). Kapordelis now seeks an evidentiary hearing based on the above grounds or "relief" based on documents in evidence thus far (Doc. 1, p. 102).

## Discussion

Rule 4 of the Rules Governing § 2254 Cases in United States District Courts provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 1(b) of those Rules gives this Court the authority to apply the rules to other habeas corpus cases, such as an action brought pursuant to § 2241. After carefully reviewing the operative petition, the Court concludes that Kapordelis is not entitled to relief, and the petition must be dismissed.

As explained by the Seventh Circuit, § 2241 and § 2255 "provide federal prisoners with distinct forms of collateral relief. Section 2255 applies to

---

asked Contos to find and destroy the videotapes. *Id.* at 1303. Contos moved them but did not destroy them. *Id.*

S.A. 7

challenges to the validity of convictions and sentences, where [Section] 2241 applies to challenges to the fact or duration of confinement." *Hill v. Werlinger*, 695 F.3d 644, 645 (7th Cir. 2012) (citing *Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000)). *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). In the instant petition, Kapordelis makes it clear that he is attacking the validity of his conviction and sentence. Under the circumstances, it would seem that the only appropriate avenue for relief is § 2255. It also appears as though Kapordelis may be bringing this petition under § 2241 in an attempt to avoid the procedural requirements for bringing a successive petition under § 2255(h).

Under limited circumstances, the "savings clause" in § 2255(e) allows a federal prisoner to challenge a conviction and sentence by filing a § 2241 petition. These circumstances are present when a petitioner can show that a remedy under § 2255 "is inadequate or ineffective to test the legality of [the prisoner's] detention." *Hill*, 695 F.3d at 648; *see United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). Being barred from filing a second § 2255 petition is not, in itself, sufficient to render § 2255 an inadequate remedy. *In re Davenport*, 147 F.3d 605, 609-10 (7th Cir. 1998) (§ 2255 limitation on filing successive motions does not render it an inadequate remedy for a prisoner who had filed a prior § 2255 motion). Instead, a petitioner under § 2241 must demonstrate the inability of a § 2255 motion to cure the defect in the conviction.

Kapordelis argues that the district court's failure to address his objections to the recusal decision of the magistrate judge deprived the district court of

S.A.  8

jurisdiction over the proceeding and rendered § 2255 inadequate or ineffective. But this is not what is meant by "inadequate or ineffective." "'Inadequate or ineffective' means that 'a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence.'" *Id.* (citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998)). Kapordelis recognizes the applicable legal standard in his petition, but focuses only on the first part of this standard, i.e., the fact that his legal theory could not have been presented under § 2255. More is required to pursue a request for relief under § 2241.

Kapordelis must also show that the legal theory ". . . establishes the petitioner's actual innocence." *Id.* Actual innocence is established when a petitioner can "admit everything charged in [the] indictment, but the conduct no longer amount[s] to a crime under the statutes (as correctly understood)." *Kramer v. Olson*, 347 F.3d 214, 218 (7th Cir. 2003). Kapordelis does not argue, or even suggest, that the charged conduct is no longer a crime, or that he has a legal theory establishing his actual innocence which he could not have presented in his § 2255 proceeding. Instead, he attacks a single decision made in his § 2255 proceeding and reviewed countless times by the district court and court of appeals. Based on this alleged defect in the § 2255 proceeding, he then seeks another opportunity to argue seven of the twenty-three grounds for relief that he raised in the § 2255 proceeding.

Put differently, "[a] procedure for postconviction relief can be fairly termed

S.A. 9

inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). In order to fit within the savings clause under *Davenport*, a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first Section 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012).

However, Kapordelis' core argument is not about a defect in his conviction at all. His argument hinges on an alleged defect in his § 2255 proceeding, i.e., the district judge's alleged failure to decide a motion for recusal. In regard to that proceeding, Kapordelis now asks the Court to set aside the legal standard in *Davenport*, or expand it to: (1) authorize review of the magistrate judge's ruling on his motion to recuse; (2) find that the district court handled the challenge to that ruling improperly; and (3) allow him to re-litigate seven claims raised in the underlying § 2255 proceeding.

The Court declines Kapordelis' invitation to do so. Section 2255(e) was not inadequate or ineffective to test the legality of his conviction and sentence. In fact,

S.A.  10

Kapordelis repeatedly, albeit unsuccessfully, placed these matters before the district court, court of appeals, and even the United States Supreme Court. Each time, he was denied the relief he sought. However, this does not render § 2255 inadequate, and the instant § 2241 petition shall be dismissed.

### Disposition

Based on the foregoing discussion, the petition is summarily **DISMISSED** with prejudice.

All pending motions (Docs. 3-4) are hereby **DENIED** as **MOOT**.

If petitioner wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If petitioner does choose to appeal and is allowed to proceed IFP, he will be required to pay a portion of the $505.00 appellate filing fee in order to pursue his appeal (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal

S.A. 11

deadline.  It is not necessary for petitioner to obtain a certificate of appealability.

*Walker v. O'Brien*, 216 F.3d at 638.

The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 14th day of October, 2014.

Digitally signed by
David R. Herndon
Date: 2014.10.14
11:41:24 -05'00'

**District Judge**
**United States District Court**

S.A. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREGORY C. KAPORDELIS,
#63122-053,

Petitioner,

vs.

JEFFREY S. WALTON,

Respondent.                                    Case No. 14-cv-1005-DRH

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

On September 17, 2014, Petitioner Gregory C. Kapordelis, an inmate who is currently incarcerated at the United States Penitentiary located in Marion, Illinois ("USP-Marion"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). The § 2241 petition did not survive preliminary review, and this Court dismissed it on October 14, 2014 (Doc. 5) ("dismissal order"). Judgment was entered the same day (Doc. 6).

Less than a month later on November 7, 2014, Kapordelis filed a motion to alter, amend, or vacate the dismissal order (Doc. 8) ("Rule 59(e) motion"). He also filed two motions seeking leave to supplement the Rule 59(e) motion on January 27th and May 12th, 2015, and the Court granted the motions (*See* Docs. 9-10, 12-14). On August 14, 2015, he filed a third motion seeking leave to supplement the Rule 59(e) motion (Doc. 15), which shall be **DENIED** because the 60-page supplement is duplicative of the Rule 59(e) motion and two supplements.

Now before the Court for consideration are the original Rule 59(e) motion (Doc. 8) and first two supplemental motions (Docs. 13-14). As discussed in more detail below, the Rule 59(e) motion and supplements shall be **DENIED**.

## I.    Background

Kapordelis is a former anesthesiologist and lieutenant commander in the United States Navy (Doc. 1, p. 7). He is currently serving a thirty-five year sentence for convictions related to child pornography. *See United States v. Kapordelis*, No. 04-cr-249 (N.D. Ga. 2004) (Doc. 499) ("criminal case"). On May 24, 2007, a jury found Kapordelis guilty of three counts of violating 18 U.S.C. § 2251(a) for sexual exploitation of a minor ("Counts 1, 2, and 3"), two counts of 18 U.S.C. § 2252A(a)(2)(A) for receipt of child pornography ("Counts 5 and 6"), and one count of 18 U.S.C. § 2252(a)(5)(B) for possession of child pornography ("Count 7"). *Id.* (Doc. 457, criminal case). He was sentenced to a term of thirty-five years of imprisonment and six years of supervised release on September 19, 2007; he also received a $20,000.00 fine. (Doc. 499, pp. 4-5, criminal case). The conviction and sentence were affirmed on appeal. *See United States v. Kapordelis*, 569 F.3d 1291, 1298 (11th Cir. 2009), *cert. denied*, January 25, 2010.

Kapordelis filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on January 26, 2011 (Doc. 536, criminal case). On the same date, he filed a motion seeking recusal of District Judge Charles A. Pannell and Magistrate Judge Gerrilyn G. Brill from the § 2255 proceeding under 28 U.S.C.

S.A. 14

§§ 144 and 455 (Docs. 538, 546,[1] criminal case). Before the § 2255 motion was decided, Magistrate Judge Brill denied the motion for recusal in a written order that was entered on September 20, 2011, after concluding that Kapordelis' claim of judicial bias arising from allegations of homophobia was unsupported (Doc. 557, criminal case). Kapordelis filed objections to this order, in the form of an "appeal" to District Judge Pannell on October 3, 2011 (Doc. 560, criminal case), and again on October 13, 2011 (Doc. 562, criminal case). In the underlying § 2241 petition, Kapordelis claims that these objections were never squarely addressed by the district court.

On December 12, 2011, Magistrate Judge Brill issued a report and recommendation to deny the § 2255 motion (Doc. 567, criminal case). District Judge Pannell adopted the report and recommendation three months later on March 6, 2012 (Doc. 574, criminal case). The district court declined to issue a certificate of appealability ("COA") (Doc. 577, criminal case).

Even so, Kapordelis appealed the denial of his § 2255 motion and the general denial of his motion for recusal under §§ 144 and 455. The district court denied his motion to appeal *in forma pauperis* ("IFP") as moot, based on its earlier decision to deny a COA (Docs. 584-85, criminal case). The Eleventh Circuit declined to issue a COA on January 23, 2013 (Doc. 596, criminal case), and later denied Kapordelis' motions for reconsideration of this decision (Docs. 597, 599, 606, 610, 614, 616, criminal case). His request for certiorari

---

[1] Kapordelis filed a second motion to recuse (Doc. 546) on June 28, 2011, and the first one was deemed to be withdrawn. (*See* Doc. 557 at n. 1, criminal case).

review by the United States Supreme Court was denied on October 6, 2014 (Doc. 623, criminal case).

In the underlying § 2241 petition (Doc. 1) that was filed on September 17, 2014, Kapordelis sought what he characterized as a "first bite" at collateral review. He argued that the original § 2255 proceeding was inadequate because the district court allegedly ignored his affidavit of bias. According to Kapordelis, the district court's subsequent decision to deny his § 2255 motion was invalid, as were all decisions of the Eleventh Circuit that followed. Upon review, this Court denied the § 2241 petition, after concluding that it did not trigger the savings clause under 28 U.S.C. § 2255(e) or satisfy the requirements for relief under *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998).

## II.    Rule 59(e) Motion and Two Supplements

### A.    Rule 59(e) Motion (Doc. 8)

In his Rule 59(e) motion, Kapordelis argues that *Davenport* does not dictate the outcome of his § 2241 petition. According to Kapordelis, *Davenport* does not apply to his case at all. He contends that *Davenport* is only applicable to second or successive § 2255 motions, and the instant petition should be treated as his first collateral attack.

Kapordelis maintains that his original § 2255 proceeding does not count. In that proceeding, Kapordelis filed an affidavit of judicial bias pursuant to 28 U.S.C. § 144 along with a motion seeking recusal of the judges, and he claims that the district court ignored the affidavit. In doing so, the district court allegedly

S.A. 16

lost jurisdiction over the proceedings, rendering § 2255 inadequate or ineffective to test the legality of his conviction and sentence.

Kapordelis maintains that the "savings clause" under § 2255(e) should provide him with an avenue to relief because his "constitutional right to due process under § 144 and Rule 4 was deliberately thwarted by a judge who had no business governing the outcome in [his original] § 2255 proceeding" (Doc. 8, p. 12). Kapordelis acknowledges that he could find no case in which the savings clause was triggered by a chain of events similar to those he describes in his petition.

He instead asks this Court to "[c]reate new law with respect to savings clause relief and get rid of the false notion that it's *Davenport* or the highway" (Doc. 8, p. 27). He recognizes that his § 2241 petition presents a "matter of first impression" (Doc. 8, p. 11). But he claims that his original § 2255 proceedings were infected by a structural defect that cannot be overlooked.

According to Kapordelis, it is the United States Supreme Court's decision in *Berger v. United States*, 41 S. Ct. 230 (1921), that controls his case. He argues that this case precludes a district court judge who is plagued by judicial bias from deciding a § 2255 motion (Doc. 8, p. 4). And he claims that this Court failed to address the case when reviewing his original petition. He seeks reconsideration of the Court's decision to dismiss his petition on the strength of this case.

Kapordelis asks this Court to then consider the merits of ten claims, including: (1) seven constitutional claims advanced in the original § 2255

S.A.  17

proceeding; (2) the due process implications of denying Kapordelis a procedurally and structurally sound opportunity to test the legality of his conviction and sentence; (3) the implications of allowing a United States Magistrate Judge (Article I judge) to determine whether a United States District Court Judge (Article III judge) must recuse him- or herself from a case; and (4) the Sixth Amendment implications of allowing a judge plagued by personal prejudice to determine the outcome of a § 2255 proceeding (Doc. 8, p. 17).

**B.      First Supplement (Doc. 13)**

In the first supplement (Doc. 13), Kapordelis expands his argument. He claims that the standard for dismissing the § 2241 petition under Rule 4 of the Rules Governing § 2254 Cases in United States District Courts was not satisfied because the § 2255 court's subject matter jurisdiction is debatable, as is the application of *Davenport* to his § 2241 petition.  He asks this Court to order a response to his § 2241 petition.

**C.      Second Supplement (Doc. 14)**

In the second supplement (Doc. 14), Kapordelis claims that the Seventh Circuit's majority decision *and* dissent in *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), both provide him with an avenue to relief under § 2241. He requests reconsideration of the Court's decision to deny his § 2241 petition on the basis of this decision as well.

S.A.  18

### III.    **Discussion**

The Seventh Circuit has held that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to either Rule 59(e) or Rule 60(b).  *See, e.g., Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994).  Different time-tables govern these motions.  Different standards also apply.

Rule 59(e) permits a court to amend a judgment only if the movant demonstrates a manifest error of law or fact or presents newly discovered evidence that was not previously available.  *See, e.g., Sigsworth v. City of Aurora*, 487 F.3d 506, 511-12 (7th Cir. 2007).  Rule 60(b) permits a court to relieve a party from an order or judgment based on such grounds as mistake, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is void or has been discharged; or newly discovered evidence that could not have been discovered within the 28-day deadline for filing a Rule 59(b) motion.  However, the reasons offered by a movant for setting aside a judgment under Rule 60(b) must be something that could not have been employed to obtain a reversal by direct appeal.  *See, e.g., Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000).

The Rule 59(e) motion (Doc. 8) was filed within 28 days of the Court's decision to deny the § 2241 petition.  The supplements (Docs. 13-14) were filed outside of this 28-day window.  Kapordelis is not entitled to relief under either Rule 59(e) or Rule 60.

S.A.  19

Kapordelis points to no errors, legal or factual, that dictate a different outcome to his § 2241 petition. He identifies no newly discovered evidence, fraud, mistake, or excusable neglect that dictates a different result. Instead, he asks this Court to carve out new law that will allow him to pursue relief under § 2241. The Court cannot do so.

Kapordelis already had an opportunity to present his arguments in a direct appeal and in his post-conviction proceedings. He presented these arguments in his post-conviction proceedings and subsequent proceedings so many times, and in so many different forms, that the United States District Court for the Northern District of Georgia and the United States Court of Appeals for the Eleventh Circuit banned him from filing further motions addressing this issue. *See, e.g., Kapordelis v. United States*, No. 12-13456 (11th Cir. June 29, 2012); *see also In re Gregory C. Kapordelis*, No. 14-12275 (11th Cir. May 22, 2014). His lack of success in his direct appeal and post-conviction proceedings does not render § 2255 inadequate or ineffective to test the legality of his detention.

Further, the cases cited by Kapordelis in his supplemental motions (Docs. 14) do not open a new door to relief. *Berger* addresses those circumstances under which a judge accused of personal bias should refrain from presiding over a criminal trial under 28 U.S.C. § 144, not a post-conviction proceeding. *See Berger v. United States*, 255 U.S. 22 (1921). In *Webster*, the Seventh Circuit held that there is no categorical bar against use of the savings clause in § 2241 cases to consider whether newly discovered evidence calls into

question the constitutionality of certain punishments (i.e., the death penalty). Kapordelis has not cited new evidence or explained how *Webster* affords him relief under § 2241. *See Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). The Court finds no basis for granting relief under either case—or any others cited by Kapordelis in his numerous, voluminous filings.    His request for reconsideration of the dismissal order and judgment shall be denied.

## IV.    Pending Motion

Kapordelis' third motion to supplement the Rule 59(e) motion (Doc. 15), which was filed on August 14, 2015, is duplicative of the Rule 59(e) motion (Doc. 8) and prior two supplements (Docs. 13-14).  For this reason, Document 15 is **DENIED**.

## V.    Disposition

**IT IS HEREBY ORDERED** that the motion to alter, amend, or vacate order dismissing case (Doc. 8) pursuant to Federal Rules of Civil Procedure 59(e) and/or 60, as well as the two supplemental motions (Docs. 13-14), are **DENIED**.

If petitioner wishes to appeal the dismissal of the action or this order, his notice of appeal must be filed with this court within thirty days of the date of this order.  FED. R. APP. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* ("IFP") should set forth the issues petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).  If petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for

the past six months) irrespective of the outcome of the appeal.  *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  It is not necessary for petitioner to obtain a certificate of appealability in an appeal from this petition brought under § 2241.  *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: 9/16/2015**

Digitally signed by
David R. Herndon
Date: 2015.09.16
12:18:39 -05'00'

**U.S. District Judge**

Page **10** of **10**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY C. KAPORDELIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-1005-DRH |
| | ) | |
| JEFFREY S. WALTON (Warden), | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

### NOTICE OF APPEAL

Comes now, Petitioner, Gregory C. Kapordelis, pro se, to provide notice of appeal from two orders: (1) the district court's October 14, 2014, order dismissing the above captioned 28 U.S.C. § 2241 petition with prejudice, and (2) the district court's September 16, 2015, denial of the subsequent Rule 59(e) motion and supplements. (Docs 5, 16).

Payment for this appeal is being mailed under separate cover, where Kapordelis's family members have agreed to sponsor this cause and forward a money order within ten days.

Enclosed, please find a required docketing statement.

Respectfully submitted this 22ⁿᵈ day of September, 2015,

_____
Gregory C. Kapordelis, Pro Se
Fed. I.D. #63122-053
Marion U.S. Penitentiary
P.O. Box 1000
Marion, Illinois 62959

Enclosure: Docketing Statement

S.A. 23